Savage, Chief Justice of the Supreme Court.
The object of the bill filed in this case is to obtain partition of certain plains, beaches, meadows and marshes situate within the town of Hempstead, in which the appellants claim to be tenants in common with the respondents.
From the allegations of the parties in their pleadings, there seems to be no dispute between them upon the point, that the lands in question were held by the town of Hemp-stead in its corporate capacity, and not by the patentees or their heirs in their individual capacity. Indeed, in no other capacity could the appellants file their bill. They have brought their suit as a town, and not as the individuals of the town. The point, that the individuals claiming under the patentees cannot recover in their individual capacity, was decided in the case of Denton v. Jackson, (2 Johns. Ch. R. 320,) which was affirmed in this court upon that point. The chancellor, in giving his opinion, had discussed the main question in this cause, viz. whether the town of North Hempstead, in its corporate capacity, was entitled to the partition prayed for in the bill, and was of opinion that it was not; but he dismissed the bill for want of proper parties. When the cause came into this court, the decree of the chancellor was affirm *133 ed upon the point on which he had dismissed the bill; but this court expressed an opinion in their decree declaring that the present plaintiffs were entitled to the partition prayed for by the plaintiffs in that suit. We have no report of that appeal, except what is found in 7 Johns. Ch. R. 254, of the general index in that volume, where the reporter says that the judges, in assigning their reasons, took very different views of the case. As the expression of an opinion in favor of the rights of the present plaintiffs, who were not parties to that suit, was an obiter diet um, and no part of the judgment of the court, wc are not now at liberty to repose ourselves upon it as a matter adjudicated in this court, and therefore not to be again agitated ; and it becomes necessary to examine the grounds upon which the claim now sought to be enforced is founded.
Before doing so, it is proper to advert to some cases cited by the appellant’s counsel, to shew that a town is not a corporation. In the case of Jackson v. Corey, (8 Johns. R. 385,) it was decided that “ the people of the county of Otsego” had not a capacity to take by grant, on the ground that the county was not incorporated. It is there said, a grant to be valid must be to a corporation, or some person certain must be named, who can take by force of the grant, and who can hold either in his own right or as trustee. In Hornbeck v. Westbrook, (9 Johns. R. 73,) it was decided that the town of Rochester, not being incorporated, was incapable of taking an estate in fee. Without impugning these cases, or subscribing to their correctness, they do not control this case. The grant in this case was certainly valid according to the case of Jackson v. Corey, inasmuch as it was made to certain individuals who might be trustees. There is also another point of difference between those cases and the case now under consideration. In those cases, the grant was from an individual; here, it was from the sovereign, who might, and, in my judgment, did give to the grantees a capacity to take and hold in a corporate character. In the ease of Goodell v. Jackson, (20 Johns. R. 706,) it was held in this court, that a grant to an Indian and his heirs was valid in favor of the heir, though an alien, because the gov» *134 eminent was competent to vest him with the capacity to take real estat6) and the intention to do it was implied in the grant -itself, which was issued by authority of law. The same principle, thus applied to an alien, has since been extended to a slave, by force of the resolutions and laws of this state. (Jackson v. Leroy, 5 Cowen, 397.) There is still another ground on which the title in the town may be sustained. It is fairly inferrible, that if any consideration was paid in the first instance, all the inhabitants contributed to it. The grant is to the patentees and their associates, heirs, successors and assigns. If the patentees were trustees, and the cestuis que trust paid the consideration, there was then a resulting trust in their favor; and such cestuis que trust have been considered as possessing the equitable estate, and the legal also, so far as to enable them to defend or maintain an action of ejectment for lands thus held by them.
The grant itself, however, considers the town as a corporation to be created; the colonial laws considered towns as corporations; (1 Van Schaick’s Revision, p. 2 ;) and, if I do not much mistake, our statutes of the present day do so consider them, for certain purposes. By the 12th section of the act relative to the duties and privileges of towns, (2 R. L. 125,) the freeholders and inhabitants, that is, the voters, have.a right to make regulations respecting their common lands. How are they to hold common lands, unless by grant 1 they surely cannot inherit. It is not to be supposed that the legislature would give the towns power to legislate in an impossible case ; and, upon the principle adopted by this court, in the case of Goodell v. Jackson, such an act of legislation of itself is sufficient to create a capacity in the towns to take and hold common lands. If, however, they have no such right, what becomes of this suit 1 The plaintiffs here sue in no other capacity; and, if they are not a corporation for the purposes contemplated by the act, the suit should be dismissed on that ground. The truth, no doubt, is, that towns are corporations in a certain degree ; and, so far as corporate powers are granted, or incidental to express grants, towns possess such powers; and particularly in the case now under consideration, it seems to me that corporate *135 powers to the extent expressed, were intended to be conferred.
This brings me to what I conceive the main question in the cause : the effect of the division of the town in 1784. In discussing this subject, it will be difficult to avoid a repetition of the arguments used by the chancellors, Kent and Sanford.
I consider the town of Hempstead a corporation. The plains, meadows and marshes were the property of the freeholders and inhabitants of the town in their corporate capacity ; but did not belong to any or either of them in their individual capacity. No one had a right to use or occupy the common property, but by leave and permission of the corporation. The corporators were not tenants in common in this property. It was competent for the corporation, had they not been limited by law, to have leased the whole of their plains and meadows to an individual for a certain rent; and in that case, the lessee would have been entitled to the exclusive occupation of them, and the corporators would have had no right to enter upon them. The state of New-' York owns a large quantity of land which belongs to the people of the state, not in their individual but in their political capacity. The people, therefore, are not tenants in common in those lands; and an entry upon the lands, without the license of the corporation, (the state,) would be a trespass. The same relation exists in all corporate property, whether it belongs to a county, a town, a city, a college, an academy, a church or a bank. Suppose the state to be divided into two states, without some special agreement, each would own the public property within its limits. So of counties, the public buildings remain the property of the old county ; yet public buildings are as much public property as public lands. So, as to the plains, meadows and marshes which are the subject of this suit. A bill filed by a new county for a partition of the gaol and court-house, which had been common property, would be the same in principle as the bill in this suit. Would not such a suit be considered preposterous 1 Suppose a religious corporation, possessed of a church and parsonage; it becomes expedient to erect a part into a new corporation ; would not the old corporation retain the prop *136 erty, unless an agreement was made as to the partition of it'! It would not be difficult to multiply analogous cases; but enough have been stated to elucidate the principle for which I contend.
It is evident to my mind, that those who procured the division of the town of Hempstead understood their rights as I understand them. The town extended across the island. The plains were in the middle, the meadows and marshes at each end. The division line of the towns is about the middle of the plains. Had there been no reservation, the inhabitants of these towns would have no other rights of taking fish in the waters of the town in which they do not reside, than the inhabitants of any adjoining town. The privilege of fishing was one, however, which neither wished to relinquish; it was therefore provided for. If it was then understood that the rights of the inhabitants were not to be changed or affected by the division, why was it necessary to make any reservation.
The act relative to the duties and privileges of towns, (2 R. L. 131,) directs the manner in which public property shall be used, or rather gives to each town the power of regulating the use of their common lands. By this act, the town of Hempstead has the power which has always been exercised by it, of directing the times and manner of cutting grass upon their meadows ; for instance : If North Hemp-stead possesses the power also of regulating the time and manner of cutting the grass on the meadows in Hempstead, it is easy to see that collisions must take place. But no such power is given to any town beyond its limits. It is not, in terms, confined to its limits; but as no power is given to the town beyond its limits, it necessarily follows that no such power is possessed by it. It is impossible for one town to make regulations for the management of public property in another town, because exclusive jurisdiction, as I construe the statute, is given to the town within which such property is located. That the division of the town into two was, at the time, understood and intended as a partition of the common property, receives strong support from the fact that after the division neither town undertook, by resolutions or other pro *137 ceedings in their town-meetings, to interfere with the other. The town of North Hempstead has regulated the use of the common property within its limits, and the town of Hemp-stead, in like manner, has regulated the use of the common property within its limits; so that if a right did exist after the division, as is now contended, that right is barred by lapse of time.
On all the grounds of defence assumed by the respondents, I am of opinion that the appellants have no right of action, and consequently that the decree of the chancellor ought to be affirmed.
This being the unanimous opinion of tile court, the decree of the court of chancery dismissing the bill of the appellants, was in all things affirmed, with costs, and the record directed to be remitted.