## MOORE *vs.* SPELLMAN.

Ejectment cannot be maintained by the beneficiary of a resulting trust.

Nor can the *cestui que trust* defend himself in an ejectment brought by the trustee : the several *dicta* to the contrary are not law.

EJECTMENT for an undivided half of certain lands in the county of Monroe, tried at the circuit court for that county in September, 1846, before DAYTON, Cir. J. The facts necessary to be stated to present the question of law appear from the opinion of the court. After the testimony had been given, the judge charged the jury that the plaintiff was entitled to recover

an undivided half of the premises mentioned in the declaration. The defendant excepted, and the jury gave their verdict ac· cording to the charge. The defendant moves for a new trial on a bill of exceptions.

*George E. King*, for the defendant. The plaintiff failed to establish a title in himself. Sophia Spellman, being illegitimate, could not inherit, and the property which her father left in her hands did not become hers at his death, but it belonged to the brothers and sisters of her father. As she purchased the farm in question, and paid for it from the proceeds of the property aforesaid, a trust resulted in favor of those to whom the property belonged. The statute then in force invested them with the legal title, so far as to enable them to maintain this action. (1 *Web. laws*, 1802, *pp.* 66, 67, 79; *Revised Laws*, 1813, *pp.* 72, 73, 79; *Boyd* v. *McLean*, 1 *John. Ch. R.* 582; *Botsford* v. *Burr*, 2 *id.* 405, 408; *Foote* v. *Colvin*, 3 *John.* 216; *Jackson* v. *Matsdorf*, 11 *id.* 91; *North Hempstead* v. *Hempstead*, 2 *Wend.* 109, 134; *Jackson* v. *Feller, id.* 465; *Jackson* v. *Bateman, id.* 570; *Jackson* v. *Leggett*, 7 *id.* 377; *Reeve's Dom. Rel.* 308; 2 *Bl. Com.* 333; 4 *Kent's Com.* 305 *to* 309, 438, *and cases in notes ; Reeve on Descents*, 31.)

*C. Nash*, for the plaintiff. The plaintiff was entitled to recover on the possession of Sophia Spellman, from whom he inherited the premises, against the defendant who is a naked possessor without color of right, whatever view may be taken of the title of Sophia. But if there were a resulting trust in favor of the heirs of John Spellman, senior, (which is not admitted,) and if the beneficiaries of that trust were in possession, the plaintiff having the legal title could recover. (7 *Bac. Ab.* 69; 4 *Kent's Com.* 303; 2 *Atk.* 612; 3 *Tomlin's Law Dic.* 688; 2 *Bulst.* 837; *Jackson* v. *Pierce*, 2 *John.* 221, *and cases cited ; Fisher* v. *Fields*, 10 *id.* 495; *Jackson* v. *Moorse*, 16 *id.* 197; *Wilson* v. *Troup*, 2 *Cowen*, 195; *Steere* v. *Steere*, 5 *John. Ch. R.* 1; *Rogers* v. *Murray*, 3 *Paige*, 390; *Jackson* v. *Deyo*, 3 *John.* 422; *Jackson* v. *Van Slyck*, 8 *id.* 380; *Jackson* v. *Sis-*

son, 2 *John. Ca.* 321; *Robinson* v. *Campbell,* 3 *Wheat.* 212; *Lessee of Spencer* v. *Marckle, Ohio Cond. R.* 356; 2 *Bl. Com.* 336; 1 *Eq. Cas. Ab.* 383, 384; 2 *Chitty's Bl. p.* 246, *note* 60; *Ca. Temp. Talb.* 164; *id.* 138, 139; 2 *P. Williams,* 146; *Adams on Eject.* 32; *Roe* v. *Reade,* 8 *T. R.* 118, 122, 123; *Sinclair* v. *Jackson,* 8 *Cowen,* 543, 571.)

*By the Court,* BEARDSLEY, Ch. J.  Sophia Spellman, whose reputed father was John Spellman, senior, was an illegitimate child of Lucy Moore, otherwise called Lucy Spellman.  The said John Spellman, senior, died intestate in 1820, leaving, as the bill of exceptions states, "property of the value of four thousand dollars in the hands of the said Sophia and the said defendant, over and above all his debts and liabilities."  In 1826, Sophia made a purchase of the land now in question, and received therefor, from the then owner, a conveyance by way of bargain and sale, the consideration money expressed therein being paid by Sophia "out of the proceeds of that portion of the said estate of John Spellman, senior, deceased, which came into her hands in manner aforesaid."  She immediately went into possession of the land thus purchased, and remained in possession until 1844, when she died intestate and without issue.

The revised statutes, *(vol.* 1, *p.* 753, § 14,) provide, that "In case of the death without descendants, of an intestate who shall have been illegitimate, the inheritance shall descend to his mother; if she be dead, it shall descend to the relatives of the intestate on the part of the mother, as if the intestate had been legitimate."

If Sophia, at her decease, was seized of this land, it would have descended to her mother, had she been living at that time; but she was not then in life, having died in 1815.  The plaintiff is a grandchild of Lucy Moore, otherwise called Lucy Spellman, and the mother of said Sophia, he and his sister Lucy Ann S. Moore being the only children of Harry Moore, who was the son of said Lucy Moore.  Harry Moore died before Sophia Spellman, and at her decease these children of Harry

Moore were the legal heirs of their grandmother, the said Lucy
Moore. Assuming, therefore, as has been suggested, that So-
phia Spellman died seized of the premises in question, an un-
divided moiety thereof descended from her to the plaintiff as
tenant in common with his sister. Upon the terms of the stat-
ute, this is too plain to admit of any controversy, whatever may
be thought of the justice or policy of the provision. The only
possible question, therefore, is as to the seizin of Sophia Spell-
man, and I must say that I am wholly unable to discover any
ground for doubt or hesitation on that point. She purchased
the land in 1826 of one who is conceded to have been the
owner, taking a conveyance in fee to herself, and thereupon
immediately entered and remained in possession until her de-
cease in 1844. This must be held to be conclusive evidence
that she died actually seized, and the plaintiff is consequently
entitled to recover, unless the fact that the land was paid for
out of the proceeds of that part of the estate of John Spellman,
senior, left in the hands of Sophia, prevented her becoming
seized, as she otherwise would have been, or in some other
way constitutes a legal bar to this action. And the counsel
for the defendant, as I understand his positions, insists,

1. That here was a resulting trust in favor of the heirs at
law of John Spellman, senior.

2. That a resulting trust is a legal estate, so that, in this
case, the entire interest at law and in equity was vested in such
heirs, no right whatever remaining in Sophia. This is urged
on two grounds, *first*, that such is the nature of a resulting
trust; and *secondly*, that trusts of that description are executed
by the statute of·uses. In one way or the other it is insisted
the *cestui que trust* has the legal as well as the equitable
interest.

3. It is also urged, that at all events, where a resulting trust
exists, the trustee cannot recover in ejectment against the *cestui
que trust*, or any one holding under him.

In my view of this case nothing like a resulting trust was
established. But let that point be waived; let the existence
of such a trust be assumed, and also that the defendant held

under the *cestui que trust.* This, as to matter of fact is granting all that is asked, but still nothing has been gained which can have any effect, at law, in an action of ejectment. In this respect there is no difference between resulting and other trusts; they are all but *trusts ;* mere equitable interests, or as defined by Cruise, (1*st vol. Dig.* 452, § 3,) "*a* right in equity to take the rents and profits of lands whereof the legal estate is vested in some other person." I speak of what were properly called trusts in 1826, when the deed to Sophia Spellman was executed, and not of trusts under the revised statutes. Nor do I refer to such uses or trusts, these words being originally perfectly synonimous, (*id.* § 2,) as were executed by the statute of uses, for they thereby became legal estates. The statute of uses, however, has no effect upon resulting trusts which remain, as at common law, mere equitable interests, and as such cognizable only in courts of equity. Numerous changes in the law of trusts have been made by the revised statutes, but they need not be stated, for none of them have any effect upon the case now in hand. (1 *R. S.* 627, §§ 45, 47, 50.)

It is true that the court of king's bench formerly held that the naked title of a trustee could not be set up at law against the *cestui que trust.* (*Doe* v. *Pott, Doug.* 710 ; *Armstrong* v. *Pierce,* 3 *Burr.* 1901 ; *Goodtitle* v. *Knot, Cowp.* 46 ; *Holdfast* v. *Clapham,* 1 *D. & E.* 600 ; *Doe* v. *Pegge, id.* 758, *note.*) But such was never the rule in this state, nor has it been followed in England for the last half century. The doctrine was overruled in *Doe* v. *Staple,* (2 *D. & E.* 684;) and in *Doe* v. *Wroot,* (5 *East,* 132,) Lord Ellenborough said, emphatically, " we can only look to the legal estate, and that is clearly not in the devisees, but in the heir at law of the surrenderer ; and if the devisees have an equitable interest, they must claim it elsewhere and not in a court of law. For as to the doctrine that the legal estate cannot be set up at law by a trustee against his *cestui que trust,* that has been long repudiated, ever since a case which was argued in the exchequer chamber some years ago." (*Vid. note, id. p.* 138.) The language of our own cases is equally explicit. In *Jackson* v. *Pierce,* (2 *John.* 221,) Thomp-

son, J. in pronouncing the opinion of the court says, " It is un-
necessary to examine into the defendant's equitable rights,
because sitting in a court of law, we cannot enforce them,
should any be found to exist.  It is a rule, at this day well set-
tled in England, (*Buller's N. P.* 110 ; 2 *T. R.* 684 ; 7 *id.* 49 ;
8 *id.* 123 ; 5 *East,* 138 *and note* ; 6 *Ves. jun.* 39 ; 2 *Evan's Poth.*
195,) and which has been adopted by this court in the case of
*Jackson* v. *Chase,* (2 *John.* 84,) that no equitable title can be set
up in ejectment in opposition to the legal estate.   The only way
in which an equitable title can be assisted at law, is, by allow-
ing the presumption, in certain cases, to prevail, that there has
been a conveyance of the legal estate." (*See also Jackson* v.
*Deyo,* 3 *id.* 422, *and Sinclair* v. *Jackson,* 8 *Cowen,* 543.)  In
*Jackson* v. *Van Slyck,* (8 *John.* 487,) the very point made in
this case was adjudged, for there a resulting trust was set up
as a defence in an action of ejectment.   The court said,
" whether the lessor of the plaintiff purchased the premises
with the money of the defendant, and so became seized for the
defendant, in consequence of the resulting trust, is not a ma-
terial inquiry in this case.   Admitting the fact," " the plaintiff
was entitled to recover because a court of law can look only to
the legal estate.   An equitable interest cannot be set up in
ejectment, as a defence against the legal title.   This is a well
established principle."   A similar defence, in an action of eject-
ment, was attempted in *Watkins* v. *Holman,* (16 *Pet.* 25,) de-
cided in the supreme court of the United States.   *Jackson* v.
*Leggett,* (7 *Wend.* 377,) and other New-York cases, had been
referred to as authorities to sustain the defence.   But it was
overruled, the court, after adverting to the cases cited, saying,
" It is not perceived why a court of law should regard a result-
ing trust more than other equitable rights; and any attempt
to give effect to these rights at law, through the instrumentality
of a jury, must lead to confusion and uncertainty.   Equitable
and legal jurisdictions have been wisely separated ; and the
soundest maxims of jurisprudence require each to be exercised
in its appropriate sphere."

With but two or three exceptions, which will shortly be ad-

Moore *v.* Spellman.

verted to, resulting trusts, like others, are held by all courts and elementary writers, to be of equitable cognizance only, and in no sense legal estate. It would be out of place to enter into the general doctrine of trusts, or that which is especially applicable to resulting trusts. I have already stated, as far as seems material to this case, the principles which apply to interests of this nature, and which, subject to the exceptions to which allusion has been made, will be found in accordance with the uniform current of authorities on this branch of the law. Those who desire to look further at the subject are referred to 4 *Kent, 5th ed. p.* 305; 2 *Story's Eq. Juris. 3d ed. ch.* 33; 1 *Cruise's Dig.* 464; 2 *Shep. Touch. by Preston, p.* 507, *and note.*)

The exceptions to what is otherwise the uniform language of the law, and to which allusion has already been made, may be found in the remarks of Chancellor Jones, in the case of *White* v. *Carpenter,* (2 *Paige,* 238,) and of Chief Justice Savage, in the case of *North Hempstead* v. *Hempstead,* (2 *Wend.* 134,) and in *Jackson* v. *Leggett,* (7 *id.* 379.)

Chancellor Jones remarked, in the case referred to, that "a resulting trust arises by implication of law, and the operation of it is to vest the estate itself in the party to whom the trust results;" and he adds: "So far has this principle been carried that courts of law have held that such interests are saleable by execution, against the *cestui que trust,* and that the right of possession and legal estate may be recovered in an action of ejectment or writ of right against the trustee, on the ground that the trust is executed by the statute of uses, and the estate itself vested in the *cestui que trust.*" These remarks, it should be observed, were made in a case pending in the court of chancery, where the *cestui que trust* is certainly regarded as the real owner, and his rights will be protected accordingly. No authority is referred to for what was said to have been held in courts of law, and I know of none, except the repudiated English cases to which reference has been made. Nor am I aware of any case, ancient or modern, in which it was ever adjudged, at law or in equity, that a resulting trust was executed by the statute of uses. And here I would observe that no legal propo-

sition is *better settled* than that the statute of uses does not execute an use limited upon an use. Upon this, all the authorities are agreed. In the case now before us, the land was conveyed to Sophia Spellman, by a deed of bargain and sale, which is defined to be " a kind of real contract, whereby the bargainer for some pecuniary consideration, bargains and sells, that is, contracts to convey the land to the bargainee ; and becomes by such a bargain a trustee for, or seized to the use of the bargainee : and then the statute of uses completes the purchase : or, as it hath been well expressed, the bargain first vests the use, and then the statute vests the possession." (2 *Bl. Com.* 338.) In this case, therefore, the legal title to this land became vested in the bargainee, (Sophia,) by force of the statute of uses, one use being executed to attain that result. Now, had a second use, or trust, been limited, in express terms, by this deed, in favor of the heirs of John Spellman, senior, it would not have been executed by the statute, for an use cannot be limited upon an use, (*id. p.* 335, 336; 1 *Cruise,* 453, § 4,) and in a deed of bargain and sale the use can be limited to no other person than the bargainee. (*Jackson* v. *Myers,* 3 *John.* 388; *Jackson* v. *Cary,* 16 *id.* 302; *Doe* v. *Passingham,* 6 *Barn. & Cress.* 305.) It would certainly be remarkable if the statute should be held to execute a trust, resulting by implication of law, when it would not execute it if expressly declared in writing.

In the case of *North Hempstead* v. *Hempstead,* (*supra,*) Chief Justice Savage said, " If the patentees were trustees, and the *cestuis que trust* paid the consideration, there was then a resulting trust in their favor; and such *cestuis que trust* have been considered as possessing the equitable estate, and the legal estate also, so far as to enable them to defend or maintain an action of ejectment for lands thus held by them." And in *Jackson* v. *Leggett,* (*supra,*) he thus expressed himself: " The legal estate was in Walton, and in a court of law the legal estate must prevail. The only exception to the rule, of which I am aware, is in the case of a resulting trust ; in such case the trust may be proved by parol and the estate of the *cestui que*

Moore *v.* Spellman.

*trust* may be sold on execution, and has been so far considered the property of the *cestui que trust,* as to be a defence in an action of ejectment; (3 *John.* 216 ; 16 *id.* 199, *and Jackson* v. *Matsdorf,* 11 *id.* 97;) in which last case the *cestui que trust* was said by Ch. J. Thompson to be the real owner. So also in *Jackson, ex dem. Ketchum,* v. *Townsend,* (not reported,) where money was sent by the defendant to purchase lands of the surveyor general, and the deed was taken in the name of Ketchum ; in an action of ejectment by Ketchum to recover possession, we held that Townsend being the real owner, was entitled to retain the possession against his trustee. *That question, however, is not raised by this case."*

No authority, it will be observed, was referred to for what was said in the case of *North Hempstead* v. *Hempstead,* nor was the remarks made, material to a decision of that case. They could not be, for it was a chancery case, carried by appeal to the court of errors, where the opinion of the chief justice was delivered.

But authorities were referred to for what was said in the case of *Jackson* v. *Leggett,* all of which, except *Jackson* v. *Townsend,* (not reported,) have been examined, and they certainly sustained the remark of the chief justice, that a resulting trust may be proved by parol, and the interest of the *cestui que trust* sold on execution. As to this last point, *Bogart* v. *Perry,* (1 *John. Ch. R.* 52 *and* 17 *John.* 351,) and *Guthrie* v. *Gardner,* (19 *Wend.* 414,) may also be examined. These interests, however, are not liable to be thus sold because they are legal estates, but because the statute in express terms authorizes their sale. As I read the cases in 3, 11 and 16 *John.* to which reference is made by the chief justice, they are very far from maintaining the position that a resulting trust may be set up as a defence in an action of ejectment. Indeed, it seems to me they give no countenance to such an idea. But the chief justice admitted that the case before him did not raise any question as to the nature or qualities of a resulting trust; his remarks, therefore, cannot be regarded as authoritative upon the question. In truth the remarks of the learned chancellor

and chief justice, to which I have referred, were *obiter*, and no upon the points in judgment. As such, although entitled tc great consideration, they cannot be followed as authorities. I have a sincere and profound respect for these distinguished jurists, but I cannot agree that their remarks, in the cases to which reference has been made, afford such evidence of the law, as to overthrow principles, otherwise universally, I think I may say, of undoubted and conceded authority.

It may be that a court of equity can afford some relief, in this case, to the heirs of John Spellman, senior; but that is not a question before us. I cannot find room for a doubt that, at law, this plaintiff is entitled to recover, although I am far from approving of the policy or justice of the statute, which gives to him a right to this land. But it is our duty to stand by the law as it is, and apply it with scrupulous fidelity and exactness to the case before us. If we err, redress may be had in a higher tribunal; and if the law is faulty, that may be corrected by the legislature.

I think there was no error in the trial of this cause, and a new trial should be denied.

Ordered accordingly.