Cattaraugus General Term, February, 1851. *Sill, Marvin, and Hoyt,* Justices.

## Crary vs. Goodman.

In an action brought since the adoption of the code, to recover the possession of land, founded on a legal title in the plaintiff, an equitable right in the defendant to a conveyance is not a defense, any more than it was previously.

It was not the object and effect of the 69th section of the code, in introducing a form of proceeding adapted to the enforcement of both legal and equitable rights, to abolish all distinction between legal and equitable remedies.

By that section one form of *proceeding* is made common to both legal and equitable actions. One mode is prescribed for the prosecution of rights and remedies, whether legal or equitable; but the pre-existing distinction between those rights and remedies which the common law enforced, and those which equity alone could protect and administer, remains untouched.

Crary *v.* Goodman.

THIS was an action for the recovery of real property, tried at the Cattaraugus circuit court in January, 1850. The plaintiff proved the title to the land in question to be in himself, and that the defendant was in possession. The defendant set up in his answer, that he was in possession as the tenant of one Daniel Huntly; that the land in controversy adjoined land of which Huntly had the title; that Huntly's purchase in fact included the land in question, which was owned by his grantor; that both parties supposed that it was included in the deed to Huntly, but by mistake it was omitted. Other facts were stated in the answer, making a case which would have entitled Huntly, in a proper action for that purpose, to a conveyance of the land, the possession of which is the subject of this action. On the trial the defendant offered to prove the facts stated in his answer, to which the plaintiff's counsel objected, and the judge decided that no equitable rights, which the defendant's lessor might have, could be interposed as a defense to the action, founded as it was on the legal title, and excluded the evidence. The defendant's counsel excepted. The plaintiff had a verdict and judgment, and the defendant appealed.

*E. Harman*, for the appellant.

*Asgill Gibbs*, for the respondent.

*By the Court*, SILL, P. J. Prior to the adoption of the code of procedure, the defendant's equitable claim would not have constituted a defense to the action. That it would is not pretended. But it is supposed by the defendant's counsel, that now, an equitable right in the defendant, to a conveyance, is sufficient to defeat an action for the possession, founded on a legal title in the plaintiff. It is contended that the object and effect of the 69th section of the code, was not only to introduce a form of proceeding adapted to the enforcement of both legal and equitable rights, but to abolish all distinction between legal and equitable remedies. Whether such is the operation of the section referred to is in effect the question presented upon this appeal.

The defendant's counsel takes the ground that his view is in accordance with the spirit of the constitution, and seeks to deduce from it an argument in favor of his position.

The question whether the constitution should contain a recognition of distinct legal and equitable jurisdictions, was elaborately discussed, and warmly contested in the constitutional convention. The third section of the sixth article of the constitution was originally reported by the committee having that subject in charge, as follows : " There shall be a supreme court, having the same jurisdiction in law and equity, which the supreme court and court of chancery now have, subject to regulation by law." (*Debates in Conv. Argus ed.* 439.) While this section was under consideration, strenuous efforts were made, by motions to strike out, by amendment and by substitutes, to get rid of that part of the section which refers to distinct jurisdictions in law and equity. These attempts, however, all failed, and the section, after amendment in other respects, was adopted in the following form : " There shall be a supreme court having *general jurisdiction in law and equity.*"

Those who were in favor of blending into one, our separate systems of legal and equitable jurisprudence, took the ground (which was conceded expressly and tacitly by all) that the use of the words " *law and equity*," in the connection in which they are found here, gave a constitutional sanction to the separate continuance of these systems.

A distinguished member of the convention said, in closing a very pungent speech upon this subject, that the object of his remarks was, to show " that it was expedient to avoid the use .of the terms *law and equity* in the section, and that in its place they should use some term descriptive of the judicial power generally." (*Deb. in Conv. Arg. ed.* 443.)

The warm contest on this point, which took place in the convention, adds significance to these terms in the constitution, where we now find them, and their retention would seem to settle the question that the old distinction referred to was understandingly and designedly continued.

It has been said that the constitution abolished the *court of*

Crary *v.* Goodman.

*chancery,* and that a design was thus evinced to abolish the system of equity jurisprudence as the subject of a distinct jurisdiction. The premises upon which this argument rests are literally true, but false in spirit. The court heretofore known as the court of chancery was abolished, but all its powers and jurisdiction were preserved and conferred on a newly organized tribunal. The latter is therefore as much a court of chancery *in fact*, as the former had been. The change of the name and of the presiding officer is nothing, so long as this equitable judicial power, in all its former plenitude, is preserved, maintained and exercised. The conferring of legal and equitable jurisdiction on one court no more proves the destruction of the latter than the former; nor does it show that one is superseded or both confounded. The judiciary act of 1847 regarded legal and equitable jurisprudence as distinct systems, though administered by one tribunal. The modes of proceeding and the character of the remedies, on the law and equity sides of the supreme court, were as different as they had been before the adoption of the new constitution, and the provisions of that instrument furnish no ground for argument in favor of the defense.

But it is claimed that the defense offered in this case was made admissible and effectual by the 69th section of the code of procedure. It is as follows : "The distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished ; and there shall be in this state, hereafter, but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a *civil action.*" It is the first member of the sentence, which has been understood by some to have done away with the distinction between legal and equitable rights, and between legal and equitable remedies—as though it had declared that equitable interests in property were hereafter to carry with them all the rights and incidents which have heretofore appertained to the legal title.

It is difficult to perceive how such a conclusion can be drawn from a careful and unprejudiced examination of this section. If any such impression arises from a perusal of the first part of

the section, a recurrence to the last, it seems to me, should dispel it. For that which the first member abolishes, the last provides a substitute, which is simply this; "There shall be in this state, hereafter, but one *form of action* for the enforcement or protection of private rights, and for the redress of private wrongs." One form of *proceeding* is made common to both legal and equitable actions. One mode is prescribed for the prosecution of rights and remedies, whether legal or equitable; but the pre-existing distinction between those rights and remedies which the common law enforced, and those which equity alone could protect and administer, remains untouched. This section refers to the mode of commencing and conducting actions in court. It does not provide for redress without action, where an action was before necessary, nor does it make that a defense which was not one before it passed into a law. Without inquiring how far the intention of the commissioners on practice, in reporting this section, is to be taken as evidence of the design of the legislature in passing it, we may refer to their remarks accompanying their report, as tending to confirm the construction above indicated. After dwelling at some length upon the evils, which they supposed had arisen, from the administration of law and equity in different courts, and glancing at the remedy which the constitution in part afforded, they, (at page 74 of their first report,) proceed as follows : " It is however, no part of our purpose to present the *principle of an union of law and equity jurisdictions* upon a broader basis than that which has reference to *their forms of proceeding*. It is enough for us to know that the fundamental law has united these functions in one tribunal, and in recommending to the legislature *a system of practice* by which those functions may be conveniently exercised, it is only necessary that we should take care not to *encroach upon substantial rights*. Keeping in view the distinction between *rights* on the one hand, and *the means of their ascertainment and enforcement* on the other, the only question is, whether a *mode of proceeding* common to all civil *controversies, whether known as legal or equitable*, can be safely and conveniently prescribed." Again (at page 146) they say, " No rule of law, by which rights

and wrongs are measured, will be touched; the object and effect of the change being only the removal of old obstructions, in the way of enforcing the rights and redressing the wrongs."

I am aware that the commissioners, in their speculations, have used language which at first blush, appears to convey a different meaning from this; but I shall not attempt to reconcile or explain it. What I have quoted was said by them to explain the design, meaning and effect of the law of pleading and practice which they introduced. I can perceive nothing in this language indicating any design to dispense with equitable actions in cases in which they had been previously required, to defend or enforce a party's rights. On the contrary, the continuance of controversies, distinguished as *legal* and *equitable*, is contemplated *in terms*, and the object avowed is to provide a *mode of proceeding* which may be used in both.

It may be proper also to add that section sixty-nine was professedly reported in obedience to the injunction of the legislature, (*Sess. Laws of* 1847, *p.* 67, § 8,) requiring the commissioners to provide for " a uniform course of proceeding in all cases, whether of *legal* or *equitable* cognizance," thus recognizing the continuance of both classes to be administered in one form, but repelling the idea that the legislation relating to pleadings and practice, was to extend to substantial rights and remedies.

It follows that an equitable right in a defendant, to have land conveyed to him, is not a defense to an action for the possession, any more than it was before the code was adopted. The right to the possession is incidental to the legal title; or rather it is one essential ingredient of it. Where is the reason for saying that the sixty-ninth section of the code has detached the essential interest from the legal estate and appended it to an equitable interest merely? The argument comes to this, and to maintain the defense, it must be held that the code has transfered the right to the possession of land from the legal owner to him who has an equitable claim to the title. Such an interpretation would produce the consequences which the commissioners said it was their duty to guard against. It would, by construction, " *en-*

*croach upon substantial rights,*" which both the common law and preexisting statutes concurred in securing to him who holds the legal title.  It seems to me that the defendant's argument, when followed out, destroys itself.  The facts offered to be proved by him, are claimed to constitute an *equitable* defense to the action.  But to give it efficacy, it is necessary to insist that the equitable owner has the right to possession, as between him and the owner of the fee.  If this were so, the defense would be a legal one.  The action is for the possession, and he who is entitled to the possession is, by the *common law*, entitled to judgment.  Thus the case is placed without the operation of the section, the application of which is indispensable, as a starting point in the argument.

There are other parts of the code which recognize the distinction between legal and equitable actions, although the language is not used, in which the distinction is usually expressed.  The two hundred and fifty-third section enumerates those actions which have been known as actions at law, heretofore, and provides that issues of fact joined in them shall be tried by a jury, unless a trial by jury is waived, or a reference be ordered according to law.  Every other issue is made triable by the court, unless a special order is made for a trial by jury.  (§ 254.) This provision embraces all "issues of fact joined in actions instituted to enforce or protect equitable rights, and applies to them the practice, in relation to trials, which was pursued in the court of chancery.  That court exercised the discretionary power of ordering issues of fact to be tried, in proper cases, by jury, and this same discretion, under this section, is still to be exercised by our present courts.  The code itself, thus makes an important distinction between legal and equitable actions, although it abstains from using these terms.  The trial of the issues in this cause, according to the spirit and intent of those two sections, is assigned to different tribunals.  The issue joined upon the allegations in the complaint touching the plaintiff's title, was triable by a jury.  That joined upon the special matter set up in the answer, touching the equitable interest of the defendant, was triable by the court.  It is true, that these were

both issues of fact, joined in an action for the recovery of real property, and literally within the terms of the two hundred and fifty-third section, which declares issues joined in such actions to be triable by a jury. But in my opinion this is not an answer to the argument drawn from the provisions of these two sections. If the defendant had instituted an action to enforce the equitable right, which he sets up here as a defense, and the same issue had been found, it would have been within section two hundred and fifty-four, and triable by the court. We are not to suppose that the legislature entertained the absurd design of making the matter presented by a complaint, triable by one tribunal, and the same matter, when presented by an answer, triable by another; but the evident intention was to make the mode of trial depend upon the character of the matter in controversy. It would seem to follow that the different questions of fact, embraced within the respective provisions of sections two hundred and fifty-three and two hundred and fifty-four, are not in contemplation of the code to be litigated in the same action.

There were some other questions presented on the argument, but the decisions at the circuit were right, and the judgment must be affirmed.

---

NEW-YORK GENERAL TERM, June, 1851. *Edmonds, Edwards, and Mitchell,* Justices.