RILEY *against* THE CITY OF ROCHESTER

A municipal corporation, having power by its charter "to purchase, hold and convey any estate, real or personal, for the public use of said corporation," is not thereby authorized to hold lands beyond its boundaries to be used as a highway.

A conveyance to such corporation of lands beyond its boundaries for the purpose of a street is void.

THIS was an action of trespass brought in August, 1847, in the supreme court, for entering upon the land of the plaintiff, situated in the city of Rochester, and laying out and maintaining a highway thereon. The plea averred that the land in question was conveyed in December, 1827, by Josiah Bissell and Enos Stone, then seized and in possession thereof, to the trustees of the village of Rochester, "for the sole and only use, and trust, and confidence, that the two several above described parcels of land shall forever hereafter be used, occupied and enjoyed as public streets for the use of the corporation known by the name of the trustees of the village of Rochester, and for no other or different use or purpose whatsoever." It was also alleged that the city of Rochester, by the act incorporating it, passed in 1834, succeeded to all the rights of

the village of every description; that the lands described in said deed "are common and public streets;" that the defendants improved that part thereof described in the declaration as a public street, which is the supposed trespass, &c. Replication, that the land at the time of the conveyance was not within the bounds of the village of Rochester. The defendant demurred to the replication, assigning for special cause that it was not denied that the land was a public street in the city of Rochester at the time of the alleged trespass.

The trustees of the village of Rochester, by the act of incorporation passed April 10, 1826 (*Laws of* 1826, *p.* 112, § 1), were made capable of " purchasing, holding and conveying any estate, real or personal, for the public use of said corporation." They also possessed the usual powers given to such corporations, in relation to laying out, opening, grading and repairing streets.

Judgment for defendant on demurrer, from which this appeal is taken.

*H. R. Selden* for the appellant.

I. The trustees of the village of Rochester were not authorized by their charter to hold lands beyond their corporate boundaries for the purpose expressed in the deed of Bissell and Stone to them, and so far as it embraced such lands that deed was void. 1. They had no power to hold lands beyond their corporate limits for any purpose. (1.) Corporations have no rights except such as are especially granted, and those that are necessary to carry into effect the powers so granted. (15 *John.,* 383; 5 *Wend.,* 219; *Jackson* v. *Hartwell,* 8 *John.,* 332; *McCullough* v. *Moss,* 5 *Denio,* 578; 3 *Pick.,* 239, 240; 2 *Kent's Com.,* 283.) (2.) The powers and objects of this corporation were governmental merely and were limited to the territory described in the charter. Of all those powers, not one points beyond the

boundaries of the village for its exercise. (3.) If the powers of corporations are extended by implication so as to embrace everything *convenient* to carry into effect the express powers, instead of being restricted to what is *necessary*, their authority will be practically without limitation. 2. If that corporation had power to hold lands for any purpose beyond its boundaries, it had none to hold them for the purpose expressed in the deed. (1.) All the powers given to the corporation over streets by its charter are limited expressly to streets " within the said village." (*Laws of* 1826, 120, § 13; *id.*, 122, § 20.) (2.) It could not exercise control over streets beyond its boundaries without coming in conflict with the officers of the towns. (1 *R. S.*, 501, §§ 1, 2; *N. Hempstead* v. *Hempstead*, 2 *Wend.*, 136; 2 *John. Ch. R.*, 336; *Hopk. R.*, 292; 2 *Wend.*, 109.) (3.) If the power be claimed as an incident on the ground of its necessity, that necessity should have been alleged, so that it could be put in issue; but it is not mentioned in the plea. (*McCullough* v. *Moss*, 5 *Denio*, 507.)

II. The replication is not defective for the special cause assigned. 1. The allegation in the plea, that the premises "*are* common and public streets," relates to. the time of the plea, August, 1847. The plaintiff could not deny that allegation. The premises were then "a common and public street;" they had been made so by the defendants, which is the very wrong complained of.

III. If the deed was ever valid, it gave to the grantees a mere right of way, or easement, and suffering that right to lie dormant for twenty years is conclusive evidence of its abandonment. (*Hooker* v. *The Utica Turnpike Co.*, 12 *Wend.*, 371; *Gidney* v. *Earl*, *id.*, 98.)

By the terms of the deed the land was to be used, occupied and enjoyed " as a public street, and for no other or different use or purpose whatsoever." We think these words create a condition, the failure to observe which terminated the estate. But however that may be, they clearly restrict

Riley *against* The City of Rochester.

or limit the right granted, to a mere easement; and the grantees having neglected for almost twenty years to open the road or put it in use, it should be considered as abandoned. (1 *R. S.*, 521, § 99; *Corning* v. *Gould*, 16 *Wend.*, 531.)

*L. Farrar* for the respondent.

I. The trustees of the village of Rochester were made capable by their act of incorporation of " purchasing, holding, receiving and conveying any real or personal estate for the public use of said village." There is no restriction of their power to take the conveyance of land, either in or out of the village, for the public use. It might very well happen, as suggested by the justice who delivered the opinion in the court below, that the public might require the use of real estate not within the bounds of the village; as for instance, for a pest-house, cemetery, or public road to the steamboat landing, or for various other useful purposes, and there is no restriction imposed by the act. In this case, the land was partly within and partly without the limits of the village. The conveyance was made ten years after the village was incorporated, and when, of course, its actual bounds were much extended, with anticipation of much further extension, which has since been realized, as the land is now all within the city; and the conveyance of land for the public use might be a material inducement and aid to enlarging its bounds. There is, as has been stated, no restriction as to the conveyance of land for the public use; and the court will not say, from the mere fact of the land not being at the time within the village, that it was not for the public use, and this in opposition to the express language of the conveyance. Something more than this, it is apprehended, will be required, to take from the public use of the city the rights acquired under this deed, and this is the only answer to the plea. The

restraints imposed by the Revised Statutes do not affect this question, as the authority to hold land for the uses of the corporation was given by the village charter, and the deed received and accepted before the passage of the Revised Statutes. But it is believed there is no restriction affecting the question in the Revised Statutes. By the *R. S., part* 1, *ch.* 18, *tit.* 3, § 1, *sub.* 4, corporations are authorized to hold such real estate as the purposes of the corporation may require. The intendment is that the land was acquired for the purposes of the corporation, and within its powers. (*Ex parte Peru Iron Co.*, 7 *Cow. R.*, 541.) At common law there was no restriction, and in this state there is none, except such as is imposed by the act of incorporation or by general laws. (*Kent's Com.*, ed. 1840, *vol.* 2, 384, *and cases cited.*) There is no restriction either by the act of incorporation or any general law, which could prevent the village from taking this conveyance.

II. It is expressly averred in the plea that the land was a common and public street in the city, and that the corporation improved it as such. This is not denied by the replication. The city was authorized by its charter (*Laws of* 1844, 179) to grade or improve the streets of the city. The city had a right to exercise that power at such time as it deemed best for the public interest. The replication is therefore no answer to the plea in this respect, and the judgment of the supreme court on the demurrer should be sustained on this ground.

TAGGART, J. In the view I have taken of this case the judgment of the court below cannot be sustained. The trustees of the village of Rochester exceeded their power when they attempted to take title to the land in question. Chancellor KENT says: "The inference from the statutes creating corporations and authorizing them to hold real estate to a certain limited extent is that our statute corpo-

rations cannot take and hold real estate for purposes foreign to their institution." (2 *Kent's Com.*, 229.)

In the case of *Denton* v. *Jackson* (2 *John. Ch. R.*, 336), Chancellor KENT, speaking of the powers of towns, says: "Its power is confined to its own limits, and without some special provision it cannot, as of course, possess any control or rights over lands lying within another town."

In the case of *North Hempstead* v. *Hempstead*, in the court of errors (2 *Wend.*, 136), Chief Justice SAVAGE, in delivering the opinion of the court, which was unanimously concurred in, says: "By this act" (the act relative to the duties and privileges of towns, 2 *R. L.*, 131), "the town of Hempstead has the power which has always been exercised by it, of directing the times and manner of cutting grass upon their meadows, but no such power is given to any town beyond its limits; it necessarily follows that no such power is possessed by it. It is impossible for one town to make regulations for the management of public property in another town, because exclusive jurisdiction, as I construe the statute, is given to the town within which such property is located."

By the charter of the village of Rochester (*Laws of* 1826, *ch.* 140, § 1), it is provided, among other things, that the corporation "shall be in law capable of purchasing, holding and conveying any estate, real or personal, for the public use of said corporation."

It is not necessary to decide the precise question which was so ably argued in this cause, viz., "whether the corporation had power to hold lands beyond its boundaries for any purpose." We are clear that it had no power to hold lands beyond its boundaries for the purpose of exercising any governmental authority over them. By allowing the village of Rochester to hold lands out of its corporate limits "to be used as a public street for the use of the corporation, and for no other or different use or purpose whatever," the corporation comes in direct conflict with the jurisdiction of

the town in which such lands are situated. If it is impossible for one town to make regulations for the management of public property in another, it is certainly impossible for a village or city corporation to make regulations for the management of highways out of its limits. The towns in which the lands lie have jurisdiction, exclusive of all other merely local jurisdictions, to lay out, open and regulate public highways. If another corporation is allowed to hold or in any manner regulate a street or highway in such town, it necessarily comes in conflict with the jurisdiction of the town. The right or claim of such corporation must therefore fail.

The right of the defendant to hold, use and occupy the lands depending upon a grant to it for a purpose which it is not authorized to execute, the grant is invalid, and the title of the defendant must fail.

The judgment of the court below must therefore be reversed.

JOHNSON, J. It appears from the pleadings that the trespasses complained of were committed by the defendants upon the land mentioned in the declaration in improving the same as a public street. The defendants rest their right upon the effect of a deed delivered January 8, 1828, by the terms of which the then owners in fee of the *locus in quo* granted the same with other lands to the trustees of the village of Rochester and their successors forever, "for the sole and only use and trust and confidence that the same should forever thereafter be used, occupied and enjoyed as public streets for the use of the corporation grantees and for no other or different use or purpose whatsoever." The plaintiff insists that this deed is not effectual because the premises in question, at the time of the execution and delivery of the deed, were not within the limits of the village of Rochester.

Riley *against* The City of Rochester.

The question upon this demurrer is therefore whether the corporation known as "the trustees of the village of Rochester" had power at the time of the delivery of the deed in question to take and hold lands for the public use, lying beyond its corporate bounds.

The act entitled "An act to incorporate the village of Rochester," passed April 10, 1826, after fixing the boundaries of the village, declares the territory so described, "and all the freemen of this state inhabitants within the said limits, to be a body politic and corporate by the name of the trustees of the village of Rochester, and that they and their successors shall be in law capable of purchasing, holding and conveying any estate, real or personal, for the public use of said corporation."

Upon the true construction of this express power the question in this case turns. It is hardly necessary at this day to cite authority for the propositions "That corporations can exercise no powers but such as are granted expressly or incidentally; that they have such powers and capacities as are given to them and none other; that they take nothing by implication" (*People* v. *Geneva College*, 5 *Wend.*, 217–19), and it is almost equally well settled that their general powers are to be construed with regard and in subordination to the particular object of their creation as disclosed by the acts incorporating them. (*People* v. *Utica Ins. Co.*, 15 *Johns. R.*, 383 ; *Jackson* v. *Hartwell*, 8 *Johns. R.*, 422.) Upon this ground it was said in respect to towns by Chancellor KENT, in *Denton* v. *Jackson* (2 *Johns. Ch. R.*, 336), "their power is confined to their own limits, and without some special provision they cannot, as of course, possess any control or rights over lands lying within another town. So also Chancellor SANFORD, in *N. Hempstead* v. *Hempstead* (*Hopk.*, 294), says: "It seems that a town has no capacity to hold lands not within its own limits; and a town cannot apply the powers of regulation given by law to lands situated in another town." This last observation was

made in respect to the power of towns over the regulation of the enjoyment of their common lands (*S. C. in er.*, 2 *Wend.*, 136); but the principle is general, and applies with quite as much force to the regulation of public roads as to the enjoyment of common lands.

The corporation whose powers are here in question was a municipal corporation, forming a civil division of the state, and entrusted with certain political and administrative powers. These powers all looked to the attainment of merely local objects, and had regard to the health, good order and convenience of the inhabitants of that particular territory embraced within its corporate limits. Now while it is conceded that the legislature might have conferred upon this corporation powers extending beyond its limits, it is regarded as obvious that, in the absence of express language looking to such an extension of its powers, they are all to be taken as commensurate only with its territorial limits and jurisdiction. Nothing in the language conferring the power to hold real estate upon the village of Rochester, takes it out of the ordinary rule; and we must therefore conclude that the deed mentioned in the pleadings was not operative to confer upon the defendants, upon whom by statute the rights of the trustees of the village of Rochester have been devolved, the right to enter upon and improve as a street the premises in question. The replication was therefore good and the judgment below must be reversed.

MASON, J., gave no opinion.

DENIO, J., did not hear the argument.

All the other judges concurring,

Judgment reversed.