## Elay Buell and others v. Thomas B. Irwin.

*Land Contract: Rights of Vendee: Possession.* An executory contract for the sale of land has no tendency to show any legal title in the contracting vendee, nor in any person claiming under him; as evidence in an action of ejectment, of a mere equitable title, it is wholly irrelevant; and when offered to show an existing right of possession in a party claiming by assignment, under the contract,—it appearing that the assignment was obtained after issue joined in the ejectment suit, and no notice having been given of any such defence,—it was properly rejected.

*Ejectment: Compensation for improvements.* An executory contract for the sale of land, which does not purport to convey any legal possessory right in or upon the land; which creates no term; and which grants no easement, is not evidence of a possessory right, in any third party, under which a defendant in ejectment may defend or claim compensation for improvements. An implied permission to enter and make improvements amounts to a bare license only, which would be revoked by a subsequent conveyance by the contracting vendor.

*Tax sales: Warrant of supervisor: Taxes of 1844.* The direction by the super- visor, in his warrant for the collection of taxes for 1844, to the township treasurer to collect also, in addition to the aggregate tax assessed to each person, four per cent. for the compensation of the treasurer, is without authority; and a sale of land for unpaid taxes, in which is included a sum thus illegally added, is void.

*Commissioner to take acknowledgments of deeds: Seal.* A seal is necessary to authenticate the certificate of a commissioner appointed by the governor of this state to take acknowledgments of deeds in another state.

*Deed: Acknowledgment: Certificate.* A certificate by a commissioner that the grantor in a deed appeared before him "and acknowledged that * * * executed the said deed," is essentially defective; and being the certificate of a commissioner appointed by the governor to take acknowledgments of deeds in another state, and not authenticated by his seal, it is not within the healing act of 1861. The record of such a deed, by the register of deeds, is without authority, and is, therefore, not admissible in evidence.

*Heard November 2 and 3. Decided November 29.*

Error to Van Buren Circuit.

This was an action of ejectment brought by Thomas B. Irwin in the circuit court for the county of Van Buren against Elay Buell, Dewitt C. Smith, and Jacob Wesler, for a tract of eighty acres of land. The defendants pleaded jointly the general issue, and gave notice of their several occupancy, each claiming compensation for improvements upon the premises occupied by him. From the proofs offered on the trial it appeared that the plaintiff claimed title through John D. L. Montanye and Edwin W. Bud- dington, who acquired their title on the 20th of October,

24 MICH.—19.

1856, and conveyed the premises to the plaintiff's grantor on the 11th of January, 1869.

The defendants claimed under a tax deed from the auditor-general for taxes of 1844, and to show an outstanding title or right of possession in a third party, offered in evidence the following contract:—

"A contract, made the twenty-fifth day of October, 1856, between Edwin W. Buddington and John D. L. Montanye, assignees of Joseph S. Smith, of the town of Kingston, county of Ulster and state of New York, parties of the first part, and Frederick Booher, of the village and county of Kalamazoo and state of Michigan, party of the second part, witnesseth as follows, to-wit: I. The parties of the first part, for themselves, their heirs, executors, and administrators, agree to sell to the party of the second part, all those certain pieces or parcels of land, situate in the several counties in the state of Michigan as hereinafter designated, and known and described as follows, [describing among other parcels the lot in controversy]. And the said parties of the first part agree to convey any and all other lands owned by said Joseph S. Smith, or in which he has any interest, not above described, and being in the state of Michigan, to said party of the second part. II. [The terms of payment]. III. Forthwith after the full payment of said purchase money, taxes and interest as aforesaid, the parties of the first part agree to execute or cause to be executed to the party of the second part, his heirs, or assigns, a good and sufficient quit-claim deed for the said lands. IV. In case default shall be made by the party of the second part, his heirs, executors, administrators, or assigns, in any of the conditions above stipulated to be performed by him, it shall and may be lawful for the parties of the first part, if they see fit, to declare this contract void, and to re-enter upon the said premises at any time after such default, without serving on

the party of the second part, or other persons holding under him, a notice to quit said land. And in case this contract shall be so declared void, the party of the second part shall thenceforth be deemed a mere tenant at will under the said parties of the first part, and be liable to be proceeded against without notice to quit, under the provisions of an act regulating proceedings in case of forcible entry and detainer, and the acts amending the same. And the parties of the, first part, in such case, shall be at liberty to sell the said land to any person or persons whomsoever, without being liable in law or equity to the party of the second part, or any person claiming under him, for any damages in consequence of such sale, or to return, any payments made on account of this contract; and payments that shall have been made may be held by the parties of the first part as stipulated damages for the non-performance of this contract. And said first parties shall have a right to recover all damages sustained by reason of the holding over of said second party without permission. And the buildings and improvements made upon said premises, by or under said parties of the second part, shall be and remain thereon as a further and additional security for the faithful performance of the covenants of this agreement."

The court rejected the evidence and the defendants excepted. The other questions arising upon the trial, which are brought into this court for review, are fully stated in the opinion. The plaintiff recovered in the court below, and the defendants bring error.

*J. W. Breese* and *Dwight May,* for plaintiffs in error.

*H. F. Severens,* for defendant in error.

GRAVES, J.

Irwin brought ejectment against plaintiffs in error for a parcel of land in Van Buren county.

The case was tried before a jury who, by direction of the court, returned a verdict against the plaintiffs in error, and they now question some of the rulings at the trial. When the defendant in error closed his evidence in chief, he was entitled to a verdict, and that right remained when the case went to the jury, unless the court erred in excluding some ground of the defense. The evidence proposed by the plaintiffs in error was directed to three points:

*First*—To establish an adverse title either in themselves or in some third party;

*Second*—To show a valid right of possession outstanding and inconsistent with any right of possession in defendant in error; and—

*Third*—To prove and maintain their right to recover under the law allowing compensation for improvements, to defendants in ejectment who claim title by virtue of a sale for non-payment of taxes.

We are first to inquire whether the agreement by Buddington and Montanye to sell the land to Booher, and the parol evidence offered in connection with it were admissible. It was clearly inadmissible under the first point, because it had no tendency to show any legal title in the plaintiffs in error, or in any third party. As evidence of a mere equitable title it was wholly irrelevant.—*Smith v. Allen,* 1 *Blackf.,* 22 ; *Hopkins v. Stephens,* 2 *Randolph,* 422 ; *Roe v. Reade,* 8 *T. R.,* 118 ; *Doe v. Wroot,* 5 *East,* 132 ; *Jackson v. Sisson,* 2 *Johns. Cases,* 321 ; *Jackson v. Pierce,* 2 *Johns. R.,* 221 ; *Jackson v. Deyo,* 3 *Johns. R.,* 422 ; *Jackson v. Van Slyck,* 8 *Johns. R.,* 487 ; *Sinclair v. Jackson,* 8 *Cow.,* 543 ; *Jackson v. Harrington,* 9 *Cowen,* 86–88 ; *Jackson v. Parkhurst,* 4 *Wend.,* 369 ; *Moore v. Spellman,* 5 *Denio,* 225 ; *Crary v. Goodman,* 9 *Barb.,* 657 ; *Johnston v. Jones,* 1 *Black* (*U. S. S. C.*), 209, 221, 222 ; *Greer v. Mezes,* 24 *How.,* 268.

When the agreement was tendered in evidence, the offer

was coupled with a proposition to show that plaintiffs in error had connected themselves with the agreement, by an assignment to Wesler of so much of it as related to the land in question, on the 23d of March, 1870, which was long after issue had been joined in the cause, and the ruling objected to, was upon the offer so made, as a whole. It is certainly questionable whether, in any view of the intrinsic bearing of the proposed evidence, the offer should not have been rejected as embracing an element not admissible in the situation of the case. If the *assignment* of the agreement to *Wesler* furnished any ground of defense, it was one he had acquired after issue, and was not connected with the case by plea or notice.—*Jackson v. Rich*, 7 Johns. R., 194; *Jackson v. Ramsay*, 3 Cow., 75, and cases cited; *LeBret v. Papillon*, 4 East, 502.

Since, however, upon the argument, the plaintiffs in error have laid no stress upon their connection with the agreement, but have based their right to its admission upon the distinct ground that it showed a right of possession in a third party, and by consequence precluded the defendant in error from asserting a like right; and since it seems desirable to pass upon this question, the point just noticed may be waived.

Without passing upon the validity of the position the evidence was offered to support, we proceed to consider whether the agreement so offered was any evidence in favor of that position. The plaintiffs in error maintain that it was. They contend that it was specifically suited to show an exclusive right of possession in a third party. But this view is believed to be incorrect. The agreement does not purport to convey any legal possessory interest in or upon the land. It created no term. It granted no easement. It assured no authority to hold for an hour. It did not invest Booher with the legal ownership of the right to occupy for

any period.    It did not attempt to sever the legal right of
possession from the ownership of the fee.    And the only
conveyance which it required the vendor to give upon
performance, was a quit claim deed.

By its terms it undoubtedly implied the vendor's per-
mission to enter to make improvements.    But it went no
further.    It implied a bare license, which at law was
revocable; and the subsequent conveyance to John D. Smith
was sufficient to revoke it.—*Jackson v. Babcock, 4 Johns. R.,
418; Hazleton v. Putnam, 3 Chand.; 117; Rice v. Roberts,
24 Wis., 461; Drake v. Wells, 11 Allen, 141; Coleman v.
Foster, 37 E. L. & E., 489; Wallis v. Harrison, 4 Mees. &
W., 538.* We need not inquire whether any equities may
or might have arisen from an entry and improvements in
virtue of the license, which would be protected in a case
which might occur.    It is enough for this case that the
agreement had no tendency to show any legal right of
possession out of the owner of the fee, and was therefore
irrelevant under the second point.    It was not claimed to
be pertinent to the third point; whence it follows that it
was rightly excluded from the jury.    The matters offered
with it were of course properly ruled out.    By themselves
they were immaterial.

To maintain the first and third points, the plaintiffs in
error gave in evidence the record of a deed from the
auditor-general to James M. Adsit, upon a sale made in
1846 for delinquent taxes for the year 1844, and then
traced this title to themselves through the record of several
deeds, among which was one from Ira Davenport to Robert
Burns.    The validity of the evidence of this last named
conveyance, will be considered presently.    When the defend-
ant in error produced his rebutting evidence, it appeared
that the warrant on the roll of 1844, to collect the tax for
which the land was sold to Adsit, commanded the treasurer

to collect, for his fees, four per cent. over and above the amount named on the roll.

The court ruled, in effect, that this was not warranted by the law in force at the time; that it involved an illegal charge against the tax-payers, and vitiated the sale of land made as a consequence of non-payment. It is true, as claimed by plaintiffs in error, that the warrant in this particular was in accordance with the form given as a schedule to the act of 1843. But this part of the schedule to the act of 1843 was made inapplicable by amendments in 1844 of §§ 25 and 42 of the body of the act of 1843 (*Act No. 49 of 1843*, §§ *25 and 42; Act No. 96 of 1844*, § *7*). Before these amendments the treasurer received as compensation such percentage, not exceeding four per cent. on the amount collected, as the township board allowed; and this he was to collect of each tax-payer, over and above the amount specified in the warrant. The effect of the amendments was to leave the treasurer's compensation to be fixed by the board, as before; but to require the sum of four per cent. for collection expenses, to be carried into the roll, and to cut off the power to collect, as a stipend, of each tax-payer the compensation allowed by the board, and instead, to require the treasurer to retain the compensation allowed him, out of the tax collected. Accordingly, if the amendment of 1844 was observed, which required four per cent. for collection to be carried into the body of the roll, which seems not to be doubted, it follows that eight per cent. was exacted under the roll in question as collection expenses, when four was the largest per cent. allowed by law.

The ruling of the court was correct, and the deed to Adsit was rightly considered as invalid. We have no need to examine the other objections to that instrument. As the invalidity of this deed, however, did not preclude the asser-

tion of a claim for improvements by the plaintiffs in error, we shall next consider the propriety of the ruling which excluded the record of the deed from Davenport to Burns. This was one of the links in the chain of tax-title running from Adsit to the plaintiffs in error.

We have no copy of the record of this deed before us, but the bill of exceptions states that the deed bore date on the 30th of November, 1859, and was recorded on the 3d day of December, 1859. A copy of the certificate of acknowledgment is set forth, with a statement that no seal was attached to it. The certificate is in these terms:—

"State of New York, Steuben County—ss.

"On the 1st day of December, 1859, personally appeared before me, Ira Davenport, to me known to be the person *described in, and who executed the above deed,* and *acknowledged* that ——, *executed the said deed.*

[Signed]     "R. B. Van Valkenburgh, commissioner appointed by the governor of the state of Michigan to take acknowledgments of deeds, etc., for the state of New York."

Apart from the curative act of 1861, this certificate was plainly insufficient to authorize the deed to be recorded. To entitle a deed to registry, its execution by the grantor must be proved or acknowledged, and when acknowledged the evidence of the acknowledgment of execution by the grantor must appear by the certificate, and if the acknowledgment is taken abroad, before a Michigan commissioner, his certificate must be authenticated by his seal.

In this case, the certificate does not show that the grantor acknowledged that *he* executed the deed, and hence, if otherwise regular, the certificate would be bad, and the proof of execution of the deed, required by the statutes as a prerequisite to registry, would be wanting.—*Hayden v. Wescott,* 11 *Conn.,* 129.

But what is called the " certificate " is not shown to be such, without the seal. The seal is made requisite to connect the instrument with the appointed official agent—to show that the paper emanated from the proper authority, and is entitled to recognition and credit, as the legitimate official act of the identical officer whose sanction it purports to bear.　The statute is express in requiring the seal, and the regulation is one which ought not to be eluded. Some of the observations in *Marston v. Brashaw, 18 Mich., 81*, on a kindred subject, are suitable here.

It was urged, however, upon the argument, that these defects were cured or obviated, by the third section of the act of 1861 (*Sess. L. 1861, p. 16*). But this provision cannot be made to reach the case without enlarging and changing its terms. It is open to question whether the first branch of the section named has reference to acknowledgments beyond the state.　But if it has, it only cures imperfections in the certificate when it *sufficiently appears by it*, that *the person* making the same was *legally authorized*, and that the *grantor* was *personally known to him*, and *acknowledged such deed* to be "*his free act.*"　The testimony of the seal being here lacking, it cannot be said that it sufficiently appears from a " certificate," that Mr. Van Valkenburgh was " legally authorized ;" nor can it be said that it sufficiently appears that the grantor acknowledged the deed to be *his* "*free act*," since the supposed certificate contains nothing of the kind, and it is by no means certain that a court would be justified in holding that it sufficiently shows that the grantor was *personally* known to the commissioner.

The last branch of the section very clearly does not relate to acknowledgments taken in other states by Michigan commissioners.　As no aid can be derived from this

24 MICH.—20.

statute, it necessarily follows that the deed. was not entitled to be recorded, and that the registry was not evidence.

The exclusion of this matter was therefore correct, and as a consequence there remained no evidence of any legal title, apparent or colorable in plaintiffs in error, and no evidence of any outstanding adverse legal title, or of any basis for an allowance for improvements. The plaintiffs in error were in no better situation to raise the claim for improvements than if the land had never been sold for delinquent taxes. The defendant in error was entitled to the verdict, and we have no occasion to examine objections not already disposed of. The plaintiffs in error were not prejudiced by any ruling which has not been considered. The judgment should be affirmed, with costs.

The other Justices concurred.