THE MECHANICS' BANK *vs.* EDWARDS and others.

It is an unquestionable rule of equity, that where one creditor has a lien on two funds, and another creditor has a lien upon only one of those funds, the latter has a right to demand that the former shall have recourse first to the fund on which he alone has a claim, before resorting to the other.

In 1836, S. and E. conveyed 100 lots to the F. L. and T. Co., by deed in fee, for the consideration expressed therein of $170,000; upon which the company gave to S. and E. 170 certificates of $1000 each, each certificate purporting that S. and E. had deposited with the company $1000 in trust, which was so· to remain for 20 years, to bear an interest of 5 per cent; the principal to be payable at the end of 20 years.  An agreement and declaration of trust was executed between S. and E. and the company, declaring that the conveyance was on trust, that enough of the $170,000 of certificates should be applied to paying off incumbrances on the lots, and that the lots should be conveyed by the company, from time to time, to such persons as S. and E. should appoint; the company to receive the rents

The Mechanics' Bank *v.* Edwards.

and purchase money until they should be reimbursed the $170,000 and interest; upon which they were to reconvey to S. and E. such of the lots as might remain unsold. And S. and E. covenanted to pay to the company any deficiency which might exist, on account of the difference between the avails of such sales and the $170,000 advanced, with interest. In 1842, S. and E. released to the company their reversionary interest in the lots, and discharged the company from the performance of the trust; and the company discharged them from their indebtedness under the agreement and declaration of trust. *Held*, that the estate of the company, under the trust deed of 1836, did not merge in the release of 1842, so as to let in a decree obtained by the company against S. and E. in 1839, to become an incumbrance on the premises, and to be entitled to priority of payment out of the same.

*Held also*, that the trust created by the arrangement between S. & E. and the company was such a trust as the company was authorized by its charter to acccept and execute.

The doctrine of merger is never regarded with favor in a court of equity. For it as frequently violates, as effectuates, the intention of the parties.

Merger is never allowed in equity, except for special reasons, and to carry out the intention of parties. Estates are kept distinct when the interest of creditors requires it.

It is not competent for a subsequent mortgagee to set up usury in the first lien. That is a personal defence, confined to the borrower, his sureties, heirs, devisees and representatives; or to those persons only who are bound, by the original contract, to pay the sum borrowed.

In Equity. The plaintiffs filed their bill to foreclose a mortgage executed by the defendant Edwards, on a lot known as No. 23 Nassau-street; and upon a sale on that foreclosure there was a surplus of $3439,15.

The Farmers' Loan and Trust Company interposed a claim to that surplus, by virtue of a decree of the late court of chancery, in their favor, against Edwards and one Morgan L. Smith, for $8399,30, docketed 20 December, 1839, which was a general lien, and not a specific one, on the mortgaged premises. Henry Cotheal claimed the surplus under a mortgage on the same premises, No. 23 Nassau-street, for $10,000, executed by the defendant Edwards to him, and bearing date on the 22d December, 1840.

On a reference to a master, it appeared that on the 6th of June, 1836, Edwards and Smith being the owners of 100 lots of ground in the city of New-York, valued by them at $277,000, proposed to the Farmers' Loan and Trust Company to execute

to them a trust of the property at a valuation of $230,000. After some negotiation, an arrangement was made whereby Smith and Edwards, on the 1st of September, 1836, conveyed the 100 lots to the Farmers' Loan and Trust Company in fee, by full covenant deed, for the consideration expressed therein of $170,000; and the company gave to Smith and Edwards 170 certificates of $1000 each, each purporting that Smith and Edwards had deposited with the company $1000 in trust which was so to remain for 20 years, and be irredeemable for that period, on which interest at 5 per cent should be payable semi-annually to Smith and Edwards, or their assigns, on presentation of the coupons annexed; and the principal was payable to Smith and Edwards, or their assigns, on the 1st of September, 1856. At the same time an agreement and declaration of trust was executed between Smith and Edwards and the company, whereby it was recited that Smith and Edwards were the owners of 85 lots of ground in the city of New-York, which were subject to various incumbrances, and had conveyed the same to the company. And it was declared that such conveyance was on trust, that enough of the $170,000 of certificates should be applied to paying off the incumbrances on the lots conveyed, and that the property should be conveyed by the company from time to time to such persons as Smith and Edwards should appoint; the company to receive the rents and purchase money until they should be reimbursed the $170,000 with interest at the rate of 7 per cent, Upon such reimbursement, the company were to reconvey to Smith and Edwards such of the lots as might remain unsold. And Smith and Edwards covenanted to pay to the company any deficiency which might exist on account of the difference between the avails of such sales and the $170,000 advanced, with 7 per cent interest as aforesaid. It was proved before the master that at the time these certificates were given, they had a value in market of from 8 to 10 per cent below par, and that fact was known to the company.

On the 23d of September, 1841, Smith and Edwards having failed to make any payments to the company, of either principal or interest, and the amount then due from them to the

company being about $240,000, another arrangement was made between them, whereby Smith and Edwards released to the company their reversionary interest in the 85 lots, and discharged the company from the performance of the trust, and the company discharged them from their indebtedness under the agreement and declaration of trust ; the 85 lots being worth at that time about $115,000.

It appeared before the master that the decree under which the Farmers' Loan and Trust Company claimed the surplus, was in no wise connected with the transaction of the 85 lots.

The master reported that the Farmers' Loan and Trust Company had a prior claim to the surplus; and the cause now came on to be heard on exceptions to his report.

*A. Thompson & W. Kent*, for Cotheal, insisted that the decree of the Farmers' Loan and Trust Company being a general lien on all the property of Smith and Edwards, the defendants therein, they were bound first to resort to other property of their debtors, before coming down upon that on which Cotheal had a specific lien by virtue of his mortgage. That in the application of this principle, the company were bound first to exhaust their remedy on the 85 lots, which would be an ample security for them, because, 1. The transaction between Smith and Edwards and the Farmers' Loan and Trust Company, in regard to the 85 lots, was in fact a loan, and as such void because usurious. 2. It was void also because made in contravention of the acts incorporating the company. 3. That transaction, whether it was a loan secured by a mortgage, or a trust, was merged in the release of 1842, and thereby the property was discharged from the lien of that transaction, and became subjected to the lien of the decree of the Farmers' Loan and Trust Company on which they now claim the surplus in court. They cited 18 *Wend.* 591; 6 *Paige*, 19; 11 *John. R.* 534; 2 *Cowen*, 195; 6 *John. R.* 290; 15 *id.* 319; 10 *Paige*, 68; 3 *Powell*, 1088; 1 *Sim. & Stu.* 369; 18 *Ves.* 384; 7 *Paige*, 248; 11 *Serg. & Rawle*, 208; 7 *Paige*, 617; 1 *Hall's R.* 480; 8

*Paige*, 639 ; 2 *Cowen*, 678 ; 2 *Bl. Com.* 177 ; 3 *Prest. on Est.* 43, 55, 177 ; *Sug. on Vend.* 352.

*W. C. Noyes*, for the Farmers' Loan and Trust Company, made the following points : I. The decree of the company being the oldest lien, they were entitled to the surplus. II. The matters growing out of the trust have nothing whatever to do with the right of priority as between the two claims upon the fund. The most that was pretended on the part of Mr. Cotheal was that the company was bound, in the first instance, to collect their decree out of the 85 lots, upon the equitable principle that where a party has two funds, out of which he may collect his debt, he shall proceed in the first instance against that upon which the other party has no claim. This principle, however, has no application to the present case ; nor if well founded, was the master authorized to entertain it. The right could only be asserted upon a bill or a decree upon which all the equities of the parties could be adjusted. Besides, it would be grossly inequitable to apply that doctrine in this case. (6 *John. Ch. Rep.* 417, *James* v. *Johnson. S. C.*, 2 *Cowen*, 246. *Starr* v. *Ellis*, 6 *John.* 393.) III. The transaction between the company and Smith and Edwards was a trust, and not a mortgage. IV. That transaction was not usurious. (*Bank of Utica* v. *Post*, 8 *Paige*, 639. *S. C.*, 7 *Hill*, 391.) V. Nor was it illegal, or unauthorized by the charter of the company, or by the restraining act. (6 *Watts & Serg.* 227. *Lewin on Trusts*, 498, 512. *Craig* v. *Duval*, 2 *Wheat.* 45. *Cooper* v. *Whitney*, 3 *Hill*, 95.)

VI. Whatever may have been the true character of that transaction, it was all closed by the conveyance on the 23d of September, 1841, of the trust property to the company ; and no third party has a right to interfere with, or question, the settlement then made. This would be the case, even if it was usurious. (*Denn* v. *Dodds*, 1 *John. Cas.* 158. *Pratt* v. *Adams*, 7 *Paige*, 641. *Comyn on Usury*, 187.) And besides, the company had no notice of Cotheal's mortgage, and cannot be charged with constructive notice from its being recorded.

VII. The exception to the master's report should be overruled, with costs.

EDMONDS, J.  It is unquestionably a rule in equity that where one creditor has a lien on two funds, and another creditor has a lien upon only one of those funds, the latter has a right to demand that the former shall have recourse first to the fund on which he alone has a claim, before resorting to the other, to which alone the latter can betake himself for satisfaction of his claim.

I will not stop to consider the question raised at the bar, whether the matter now before me is in such a shape as to allow that principle properly to be carried out in this case; because if I shall find it to be applicable, and there is this difficulty in the case, I can at all events stay all proceedings on the distribution of the surplus, until the question can properly be brought before the court.

The first thing to be ascertained is, whether the principle is applicable to the case before me.  The decree of the Farmers' Loan and Trust Company being prior in point of time, to Cotheal's mortgage, is entitled, in equity, as well as at law, to be first paid; unless some superior equity has been created in favor of the mortgage.

The mere fact that the mortgage is a specific lien only on the premises out of which the surplus in question has flowed, while the decree is a general lien upon other property of the debtor, as well as on these premises, is not of itself enough to establish such superior equity.  Therefore, other grounds on which to build such superior equity were sought after on the argument, and I now proceed to consider them.

I will first consider that which was most strenuously urged on the argument, namely, that the first claim of the company was merged in the subsequent release, and that therefore the premises affected by those arrangements, were discharged from that claim, and were thereby subjected to the lien of the decree, and thus constituted a fund to which resort must first be had in satisfaction of the decree.  This aspect of the claim is found-

ed entirely on the technical doctrine of merger, a doctrine never regarded with favor in a court of equity. (3 *Prest. on Est.* 558. 1 *Atk.* 592. *Shep. Touch.* 121. *Phillips* v. *Phillips*, 1 *P. Wms.* 41.) For it as frequently violates, as effectuates, the intention of the parties. This case, if the doctrine should be applied, would be a striking illustration of this truth; as no one can for a moment imagine that it was the intention either of the company or of Smith and Edwards, by the release of 1842, to discharge the 85 lots from the claim of the company, and subject them to the other debts of Smith and Edwards. On the contrary, the intention is very plain, that the object was to preserve and enforce that claim and make it available to the company. On the other hand, merger is never allowed in equity, except for special reasons and to promote the intention of the parties. (3 *Prest. on Est.* 408. 1 *P. Wms.* 41.) Thus, where there is a confusion of rights, so that at law there would be an immediate merger, equity acting upon the intent, express or implied, will preserve them distinct. (*Lord Compton* v. *Oxenden*, 2 *Vesey, jun.* 264.) So where a tenant for life, paying off an incumbrance, takes an assignment, connecting it with the legal estate of inheritance, prima facie it might be a merger; unless there is evidence of an intention to continue the charge. (*St. Paul* v. *Dudley & Ward*, 15 *Ves.* 173.) So, in equity, the mortgage is not necessarily merged by union with the fee; the actual intention, not established by the acts of the party, will be presumed, from the greater advantage, against the merger. (*Forbes* v. *Moffat*, 18 *Ves.* 384.) The doctrine in equity is laid down very precisely by the master of the rolls in this case. "It is very clear that a person becoming entitled to an estate subject to a charge for his own benefit, may, if he chooses, at once take the estate, and keep up the charge. Upon this subject a court of equity is not guided by the rules of law. It will sometimes hold a charge extinguished where it would subsist at law, and sometimes preserve it, where at law it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united." And Chancellor Kent, (4 *Com.* 102,) says that merger is not favored

* Mechanics' Bank *v.* Edwards.

in equity, and is never allowed unless for special reasons, and to promote the intention of the parties. The intention is the governing principle in equity, and there it depends upon circumstances, and is governed by the intention, either express or implied, of the person in whom the estates unite, and the purposes of justice. (*Gardner* v. *Astor*, 3 *John. Ch. Rep.* 53. *Starr* v. *Ellis*, 6 *Id.* 393. *Lockwood* v. *Sturdevant*, 6 *Conn.* 373. *Denn* v. *Van Ness*, 5 *Halst.* 102.)

This being the rule in equity, it is too decisive of the main ground on which Cotheal's claim was made to rest, to render it necessary for me to consider the cases in which, for the benefit of the creditors, the estates are kept distinct, notwithstanding the doctrine of merger, and those in which the same rule obtains in respect to strangers, though as to parties and privies there may be a merger. In regard to these, it is laid down, (3 *Preston*, 447,) that notwithstanding the merger of the particular estate, persons who have interests affecting the estate which is merged, will be left in the same condition, in point of benefit, as if no merger had taken place.

Upon these principles, the intention of the parties, and the interest or benefit of the party in whom the estates unite, alike forbid my holding the estate of the Farmers' Loan and Trust Company under the deed of 1836, so merged in the release of 1842, as to let in the decree of 1839 to become an incumbrance on those premises, and entitled to priority of payment out of them.

This renders it necessary for me to consider the other grounds on which it is sought to set aside the claim of the company under the trust deed of 1836.

1. As to the usury. It is well established that this is a personal defence, and cannot be set up by a stranger to the original transaction. (*Reading* v. *Weston*, 7 *Conn.* 413. *De Wolf* v. *Johnson*, 10 *Wheat.* 367.) The chancellor, in *Cole* v. *Savage*, (10 *Paige*, 583,) attempted to overturn this rule, upon the strength of the revised statutes, (1 *R. S.* 772,) and the statute of 1837, (*Sess. L. of* 1837, *p.* 487, § 4,) and to extend the defence beyond the "borrower" and his sureties, heirs, devisees,

and personal representatives, and confer it also upon the subsequent grantees of premises subject to a usurious mortgage. But the court for the correction of errors, in *Post* v. *Bank of Utica,* (7 *Hill,* 391,) overruled his decision, and even under our peculiar statutes, confined the defence to those persons only who were bound by the original contract to pay the sum borrowed. (*Livingston* v. *Harris,* 11 *Wend.* 329.) So that within those two cases, in our court of last resort, Cotheal has no right to set up that defence in this case. And it is therefore, unnecessary for me to inquire whether the transaction of 1836, between Smith and Edwards and the company, was usurious or not.

2. As to the alleged illegality of the transaction, under the acts incorporating and relating to the company.

Under the second section of the act of 1822, relating to this company, it was authorized to take and receive, by deed or devise, any effects and property, both real and personal, which might be left or conveyed to it in trust, and to assume, perform, and execute any trust which might be created or declared by any deed or devise as aforesaid. This is the general power of the corporation; and the trust created is, in form, at least, a strict compliance with the terms of the statute. The original application was for the company to receive the lands in trust. And the final arrangement was consummated by deeds which declared that they were so received, in trust to sell and pay certain money, or to reconvey. However strong, then, may be the suspicion that this whole arrangement was a mere devise to cover a loan secured by mortgage, or a transaction in violation of some of the restrictions attempted to be thrown around this company, I am not at liberty, upon the evidence before me, to pronounce it to be otherwise than a strict trust conformable to the power specially conferred on it by the legislature. There is indeed, no evidence before me that the transaction was any thing else than one of its authorized trusts; and I see nothing in the case to authorize me to set it aside.

The conclusion, then, at which I have arrived is, that there was no other fund on which the Farmers' Loan and Trust Company had a lien, or in which it had an interest, in respect

to the decree of 1839, and to which, on the application of Co-theal, they might have been compelled in the first instance to resort; and that therefore it had a lien on the surplus in court prior to Cotheal's mortgage.

The master's report must be confirmed, and the exceptions be overruled with costs.

