*Edmonds, J.
 

 — One of the questions involved _ in this case is, how far the defence of usury is ^ 1 personal to the debtor, or may be available to other parties. The defendants who seek to set it up in this case, are merely purchasers of the equity of redemption, under a sale on the foreclosure of a junior mortgage. Relying upon the case of
 
 Morris
 
 v.
 
 Floyd
 
 (5 Barb. 130),
 
 *334
 
 the supreme court held, that those purchasers had a right to set it up, and seem to intend to overrule * 352 1 *^e case Mechanics'
 
 Bank
 
 v.
 
 Edwards
 
 (1 Barb. 271). The court, in 5 Barb., and the counsel in this case, on the argument, treat the case in 1 Barb, as a hasty decision of a single judge, at the special term, and overlook the fact, that the case was afterwards considered on appeal, at general term, before Cady, P. J., Willard and Edmonds, justices, and the ruling at the special term affirmed. (2 Barb. 545.)
 

 The conflict upon this point is not confined to the present supreme court of this state; in the supreme court of the United States, it has an abiding place also. In
 
 Lloyd
 
 v.
 
 Scott
 
 (4 Peters 205), that court (McLean, J., delivering the opinion) held, that the assignee of the debtor, of the property bound by the usurious security might avail himself of the defence; but in
 
 De Wolf
 
 v.
 
 Johnson (10
 
 Wheat. 392), it was held, that he could not.
 

 In
 
 Lloyd
 
 v.
 
 Scott,
 
 the learned judge who delivered the opinion, disposed of the case in 10 Wheaton, quite summarily, by saying, that the question whether the purchaser of the equity of redemption can show usury in the mortgage, to defeat a foreclosure, was not involved. I have carefully examined that case, and I cannot arrive at that conclusion. Prentiss, the mortgagor to De Wolf, conveyed the mortgaged premises to Barry, for the benefit of his creditors. Barry sold them and the John-sons bought them, and on a bill by De Wolf, to foreclose his mortgage, the Johnsons set up the defence of usury, as between De Wolf and Prentiss. On the argument of that case, the plaintiff’s counsel took the point, that if the contracts were usurious, the Johnsons could not take advantage of the usury, and the court, in delivering their opinion, say, there were two views of the subject upon which the court below ought to have sustained the bill: one was, that it was perfectly established that the plea of usury, at least, so far as to landed security, is
 
 *335
 
 personal and peculiar, and however a third person having an interest in the land may be affected incidentally by a usurious contract, he cannot take advantage of the usury.
 

 *Now, it seems to me, that this is an express ^ adjudication upon the point, and that too, under L circumstances very like those which exist in the case now under our consideration. In both cases, the mortgagor was a party to the suit, and suffered judgment by default, thus refusing to avail himself of the defence, and in both, the purchaser took subject to the prior mortgage which he sought to impeach. And it is upon this state of things, that the United States supreme court say, “ the case presents a third person, the assignee of an equity of redemption, setting up a defence, which, in one aspect, Prentiss himself cannot set up, and in another, which he has not set up, but, on the contrary, under the state of the pleadings, must be supposed to have refused to set up or to have abandoned.” And “ had they (the Johnsons) purchased from Prentiss, in the most absolute and general manner, and altogether without notice, actual or constructive, they still could have acquired no more than the equity of redemption, and that would not have transferred to them the right of availing themselves of the plea of usury. We have examined the cases quoted to this point, and are satisfied with their application and correctness. It would indeed be astonishing, were it otherwise, for the contrary rule would hold out no relief to the borrower; it would be only transferring his money from the pocket of the lender to the pocket of the holder of the equity of redemption.”
 
 [1]
 

 Such is the state of the question in the United States supreme court; and it would seem to be in a similar condition in our state courts. In 5 Barb. 130, the court say, they have been able to find no case to sustain the
 
 *336
 
 ruling in special term, in 1 Barb. 271. Aside from the same case, affirmed at general term (2 Barb.) and the case of
 
 De Wolf
 
 v.
 
 Johnson
 
 (10 Wheat.) already referred to, the case of
 
 Post
 
 v.
 
 Bank of Utica
 
 (7 Hill 406) is somewhat in point, for, there, one of the majority of the court, upon the strength of
 
 Reading
 
 v.
 
 Weston
 
 (7 Conn. 413) and • of
 
 De Wolf
 
 v.
 
 Johnson,
 
 states the proposition broadly, that no one but the party to the usurious loan should be permitted to avoid the contract, and says, that those * 354 1 cases reS‘arc^ Part7 **° the contract, or those J liable upon it, as the only persons who, upon principle, should be allowed to avail themselves of the usury, and that they are cited merely to show that the grantee of a mortgagor is not regarded as a party to the usurious contract, and hence, should - not be permitted to take the place of such party in avoiding his contract. And in
 
 Green
 
 v.
 
 Morse
 
 (4 Barb. 335), Mr. Justice G-ridley, both as vice-chancellor, and afterwards, on appeal, at general term, holds that a stranger cannot set up the defence, and that it can be taken only by the party or his privies in blood or estate.
 

 But, after all, the conflict in our own courts is not as great as it may appear. The case of the
 
 Mechanics’ Bank
 
 v.
 
 Edwards,
 
 in 1 Barb., does not decide as the court, in 5 Barb., seem to suppose, viz., that the defence is confinéd merely to the party to the usurious contract, nor indeed does it go as far in that respect as either the case of
 
 De Wolf
 
 v.
 
 Johnson,
 
 in the United States supreme court, or
 
 Post
 
 v.
 
 Bank of Utica,
 
 in our court of errors; for it, in terms, excepts the sureties, heirs, devisees and represen - tatives of the debtor.
 

 In order that -its precise ruling should be understood, it ought to be considered in connection with the circumstances out of which it arose. It was a contest between two creditors, in respect to the surplus produced by a sale on a mortgage, to which neither of them were parties, and the younger of these two incumbrancers
 
 *337
 
 claimed that the elder was usurious. The court held, that he was a stranger to the contract and could not set up the defence of usury, the debtor himself not having interposed it. It was not necessary to inquire, nor did the court inquire, whether heirs, devisees or personal representatives, or subsequent purchasers could set up the defence. All that was necessary to decide, and all that was decided, was, that as between two incumbrancers, the subsequent incumbrancers were strangers to the first contract, and could not avoid it for usury; and that, as to them, the defence was personal to the debtor, and in no respect attached to them.
 

 The question is, however, still left in this case (untouched by *that), whether the purchaser of the „ ;¡í equity of redemption can avail himself of the de- *- fence of usury, in a suit on the mortgage, to which the mortgagor is a party, and which defence, by allowing judgment to be taken against him, he refuses to set up.
 

 Now, in regard to this, the supreme court, in
 
 Morris
 
 v.
 
 Floyd,
 
 while they held, that the defence is not so' personal, but that the debtor’s grantee may set it up, yet do hold, that it is so far personal, that the debtor may waive it, and that, by granting, subject to the debt, he does waive it, so that the grantee cannot avail himself of it. Their language is, “ the defence of usury may be waived by the mortgagor, or any subsequent owner, so that a subsequent purchaser cannot set it up,” or in other words he may waive it, so as to bind his grantee. If he can do this, by selling subject to the payment of the debt, may he not do it, by suffering judgment and refusing to set it up ? If he can do it by an act towards a third person, can he not do it, by agreement with his creditor ?
 

 These questions and difficulties which necessarily arise, if we adopt the principle that the grantee may set up the defence of usury in the original loan, and that,
 
 *338
 
 yet, the borrower may, by an act of his own, waive it, so that a subsequent purchaser cannot set it up. But it seems to me, that they do not necessarily arise in this case, and that there is another element in it, quite material to its determination; and that is, not merely that the mortgagor sold subject to the debt, but that the purchaser took it so incumbered, and thereby bound himself, in a measure at least, to the payment of the debt. That obligation could be enforced against him by the mortgagor, and in some cases, by the mortgagee. For this reason, and irrespective of the question as to the personal character of the defence of usury, it could not be available to the purchaser. He had made a valid contract, and for a valuable consideration, that so far as he owned or was interested in the mortgaged premises, he would hold subject to the payment of the debt.
 

 356 ] It would be contrary to equity, to allow him to avoid its payment. *It would be discharging him from his obligation, and leaving the mortgagor ' still liable. It would be releasing the land from the incumbrance, when he had agreed that it should be subject to it. It would be continuing the mortgagor under an obligation, which his vendee had assumed upon himself, and in the language of
 
 De Wolf
 
 v.
 
 Johnson, “
 
 it would hold out no relief to the borrower, but would be only transferring his money from the pocket of the lender to the pocket of the holder of the equity of redemption;” and I may add, in open violation of his own valid contract. It is upon this ground, therefore, and not upon the ground, that the defence of usury is personal to the borrower, that I think the judgment below was right.
 

 Another objection is, however, made by the appellants to the judgment below, and that arises under the 267th section of the code. It appears from the bill of exceptions, that the cause was tried before a justice, without a jury, and it is one of those cases which, under § 254, is
 
 *339
 
 triable by the court/ Upon the trial, the justice directed an order to be entered by the clerk, in the minutes of the court, that judgment be given for the plaintiff, and thereupon, without the further order or direction of the court, or decision in writing of the said justice, judgment was entered for the plaintiff, “ to which,” as the record says, “ the defendant excepts.”
 

 By § 267 of the code, it is provided, that “ upon the trial of a question of fact by the court, its decision shall be given in writing, and filed with the clerk,” &c.; “judgment upon the decision shall be entered accordingly.” This language is very explicit, and as I understand it, provides that a judgment, in a case where the court acts both as judge and jury, to determine both law and fact, cannot be rendered orally, but only in writing. The decision may be made, either at the trial, or at any time within twenty days afterwards, and the meaning evidently is, that whenever it is made, whether in open court, in the presence of the parties, or after the court has adjourned, and the justice has retired to his private apartment, *there shall be something to ^ ^ ^ authenticate the judgment, something that shall *- place it beyond doubt, what is the precise point decided. Unless such be the meaning of the section in question, I can imagine none of any practical utility.
 
 [2]
 

 But this consideration is by no means sufficient to warrant us in reversing the judgment, for it does not appear, certainly, that the point was raised below. If it had been, it was an objection, not affecting the merits, which could easily have been obviated by an amendment. It does not appear to have been raised or considered at all, at the general term, whereas, if it had been, the court, by an amendment, might have cured the defect. And it does not appear, that the attention of the judge was called to the point, on the trial. The excep
 
 *340
 
 t-ion then taken is so broad, that it might have been well understood by the judge, as pointing rather, to the fact of his rendering judgment for the plaintiff, than to the form in which he did so; and we cannot say, now, on perusing the bill of exceptions, that either the special or general term had passed upon the question. An exception so vague as to leave such a doubt on the mind of the appellate tribunal, is too broad to be of any avail to the party, or to be noticed by the court. The judgment should be affirmed.
 

 Judgment affirmed.
 
 [3]
 

 [1]
 

 Miners’ Trust Company Bank
 
 v.
 
 Roseberry, 81 Penn. St. 309, 313.
 

 [2]
 

 See Heinemann
 
 v.
 
 Waterbury, 5 Bos. 688.
 

 [3]
 

 A majority of the court concurred in affirming the judgment, on the ground that the appellants could not avail themselves of the defence of usury, under the circumstances of the case ; and that the exception was too broad to raise the question mooted, under the code. They did not consider the question of the personal character of the defence of usury. May not the conflict of authority on this question be reconciled, by a consideration of the difference between those statutes which declare a usurious contract to be utterly void, and those which merely render usury a defence to the extent of the illegal interest paid ? It may be, that a purchaser of the equity of redemption would have a right to set up the defence that the prior mortgage was utterly void, which was the case of Lloyd v. Scott, 4 Pet. 205 ; whilst he would have no right to avail himself of a partial failure of consideration, as a defence
 
 pro
 
 tanio, as in De Wolf
 
 v.
 
 Johnson, 10 Wheat. 367 ; and Miners’ Trust Co. Bank v. Roseberry, 8 Penn. St. 309.