## MOSES CHAMBERLAIN, Appellant, v. JANE R. DEMPSEY, Respondent.

*Usury a Personal Defence.*

Usury is a personal defence, and can be made available only by the borrower, not by third parties.

And none but a party to a usurious contract, or his heirs, devisees, or personal representatives, can avoid a usurious contract on account of usury.

*Brewster & Lake* for Appellant.

*George R. Thompson* for Respondent.

DAVIES, CH.J.—This is an action to foreclose a mortgage, made and executed by the Defendants therein, William D. Salisbury and Samuel J. D. Arrowsmith, to the Plaintiff, to secure the payment of two certain promissory notes, made by said Salisbury and Arrowsmith to the order of one John Dempsey, and endorsed by him, and held and owned by the Plaintiff. The Court which tried the action without a jury, found as facts, that the condition of the mortgage was, that if said notes should be paid, then said mortgage was to become void, but if not, then the Plaintiff was empowered to sell the mortgaged premises in due form of law; and further, that said notes were not paid at maturity. The Court also found that during the progress of the action, the Plaintiff entered into a stipulation with the Defendants, Salisbury and Arrowsmith, of the tenor hereinafter mentioned, in consideration of the withdrawal by them of the answer interposed by them to this action.

The Court thereupon found as conclusions of law, 1. That the Plaintiff is entitled to judgment of foreclosure and sale of such mortgaged premises, for the purpose of discharging the amount of principal and interest due upon such mortgage, together with the costs of the suit.

2. That the Plaintiff is not entitled to a judgment for any deficiency which may appear upon the sale of the mortgaged premises.

And the Court ordered a reference to a referee, to ascertain and report the amount of principal and interest due to the Plaintiff

17

upon such mortgage, and also to ascertain and report the amount due upon the mortgage described in the answer of the Defendant, George W. Platt, and also to ascertain and report whether there were any prior liens by mortgage upon said premises, and whether said prior mortgages were due.

The referee to whom the matter was referred, reported that the first lien upon two of the four lots of land covered by the Plaintiff's mortgage, was by way of a mortgage thereon executed by John Dempsey and his wife, and that a judgment of foreclosure thereon and a sale thereof had been obtained in the Supreme Court on the 27th day of November, 1861, and that the amount due them was adjudged to be $3,554.84.

That the first lien by mortgage upon the other two lots, was a mortgage thereon executed by said John Dempsey, upon which there was due of principal the sum of $3,100, and interest from March 15, 1861.

That the next lien by way of mortgage in priority, and which covered all said four lots of ground embraced in the Plaintiff's mortgage, was a mortgage held by the Defendant, George W. Platt, and upon which there was due at the date of said referee's report (April 22, 1862) the sum of $3,171.17.

That the mortgage to the Plaintiff covered the said four lots of land, and that there was due thereon at the date of said report the sum of $4,854.50.

Upon the coming in of said report, a judgment of foreclosure and sale was made at Special Term of the Superior Court of New York, held on the 3d day of May, 1862, which recited the making of said order of reference, the substance of the report of said referee, and that said report had been duly confirmed, whereby said Court ordered, adjudged, and decreed that said mortgaged premises set forth in the complaint, or so much thereof as might be sufficient to pay the amount due to the Plaintiff for principal, interest, and costs, be sold at public auction, subject nevertheless to the three prior mortgages hereinbefore mentioned, and therein particularly referred to, by or under the direction of a referee appointed by the Court. The decree contained the usual directions

for advertisement and sale, and directed the referee, out of the proceeds of sale, to pay—

1. The fees and expenses of the sale;

2. Any liens on the premises for taxes and assessments;

3. The costs and expenses of the Plaintiff's attorney, amounting to $323.19;

4. The costs of the attorney of Platt, the holder of one of the prior mortgages, $40.12;

5. The costs of the attorney of Delaplaine, also the holder of one of the prior mortgages, amounting to $40.12; said sums amounting to the sum of $403.43, or so much of the said sums as the purchase money would pay; and said referee was directed to bring the surplus moneys, if any, into Court, and deposit the same with the Chamberlain of the City of New York, to the credit of the Clerk of said Court. From this judgment the Defendant, Jane R. Dempsey, appealed to the General Term of the Supreme Court, and on said appeal the General Term reversed said judgment, with costs to said Appellant, and said Court gave final judgment against said Plaintiff, in favor of said Defendant, Jane R. Dempsey. From this latter judgment the Plaintiff appeals to this Court.

I can see no ground for a reversal of this judgment, growing out of the manner in which it was rendered, and the proceedings on the trial thereof (Swarthout v. Curtis, 4 Coms. 415). The judge who first tried the action, settled and adjusted all the rights of the parties therein. If he committed no error in such disposition, it seems to me the judgment of foreclosure and sale finally entered should stand. Assuming for the present that no error was committed on the trial, then it was clearly competent for the Court, after the determination that the mortgage was a valid and subsisting security, to ascertain, and it was its duty to ascertain, the amount due thereon to the Plaintiff. The Court could not properly proceed to render final judgment of foreclosure and sale until such amount was ascertained. The Court had full power to order a reference for such purpose, and also to direct the referee to ascertain the amount of the prior incumbrances.

It was proper that all parties should have had notice of such reference and of the proceedings thereon. It appears from the papers that each of the parties had notice of the completion and filing of the report of the referee, and if any of them had any objection to the conclusions contained in the report, it was their duty to have filed and served exceptions thereto ; or if any irregularity had been committed on such reference, of which they complained, it was equally their duty to have given notice of a motion to set aside the same. The Defendant's silence must be taken and deemed an acquiescence in the conclusions of the referee, and of the regularity of the proceedings before him. What further remained to be done ? The Plaintiff had obtained an adjudication of the Court upon the rights of all the parties and upon the validity of his mortgage, the amount due to him upon his security, and the amount and order of the prior liens. To give efficacy to the Plaintiff's rights as thus established, it only remained to render the usual judgment of foreclosure and sale. This was done at the Special Term of the Court held on the third day of May, 1862, by the entry of the usual and, in all respects, proper judgment. There is no force in the objection that this judgment was not valid, because the Court was not held at that time by the same judge who rendered the preliminary judgment, ascertaining and settling the rights of the parties and ordering the reference. That interlocutory judgment was but in aid of the final judgment entered, and the Court pursued the correct practice in adopting and founding the final judgment upon the previous determination of the rights of the parties; and no one was prejudiced by this, as the appeal from the final judgment brought up for review the previous interlocutory orders or judgments, and in a case like this they could not be reviewed until final judgment was rendered. Neither is the final judgment objectionable, in that it made provisions for the payment, in the first place, out of the proceeds of the sale, of the mortgaged premises, and of the costs and expenses of the Plaintiff's attorney. Nor can this Appellant complain that the costs of the attorneys of the two prior mortgages were to be paid out of such proceeds, prior to

any payment to this Plaintiff, on account of the amount adjudged due to him.

As already observed, if there was any irregularity in obtaining the final judgment, it should have been availed of by motion. An order, if made on such motion, could probably be reviewable as an intermediate order, on the appeal from the judgment. We cannot now review these irregularities, if any, for the obvious reason that the parties have not been heard thereon in the Court below, and we have not consequently either the facts before us, or the determination of that tribunal upon them.

We do not concur with the opinion of the Court, that it was not competent for the Court at Special Term, upon the final hearing, to award such costs as it in its discretion thought proper. The subject of costs was not disposed of when the case was first before the Court, and when the rights of the parties were settled, and the interlocutory order or judgment made. It was, therefore, not only competent, but eminently proper, that in the final judgment the question of costs should be disposed of; and it was no objection to such disposition, that the Court was held by a different justice than by the one who made the interlocutory decree or order. The only remaining point to be considered is whether the Defendant, Jane R. Dempsey, was in a condition to set up the usury, if any, in the mortgage. According to the allegations of the answer, the Defendant, Jane R. Dempsey, was the owner of the fee of the premises covered by the Plaintiff's mortgage, and such ownership was acquired subsequent thereto. She sought to prove that the Plaintiff's mortgage was given to secure a usurious loan made to the Defendants, Arrowsmith and Salisbury. If any such defence existed to the mortgage, the Defendant, Dempsey, could not avail herself of it. Usury is a personal defence, and can only be availed of by the borrower. The law in this State is clearly settled on this point.

In Bullard *v.* Raynor (30 N. Y. 197), Judge Wright said, all the other judges concurring : " There is another conclusive ground against the Plaintiff. No one but a party to a usurious loan, or his heirs, devisees, or personal representatives, can avoid a usurious

contract on account of usury (Post v. The Bank of Utica, 7 Hill, 391; Rexford v. Widger, 2 Coms. 131). Usury cannot be set up by a stranger to the original transaction. A purchaser from the borrower is not included in the term borrower, and cannot avoid a note or mortgage for usury (Schermerhorn v. Talman, 4 Kern. 127). Nor is a right of action to avoid notes or contracts, on account of usury, assignable." To which may be added, as directly in point, the case of The Mechanics' Bank v. Edwards (1 Barb. S. C. Rep. 271; S. C., 2 Barb. 545). In this case a learned justice of the Supreme Court said: "As to usury, it is well established that this is a personal defence, and cannot be set up by a stranger to the original transaction (Reading v. Weston, 7 Conn. 413; De Wolf v. Johnson, 10 Wheat. 367). The Chancellor, in Cole v. Savage (10 Paige, 583), attempted to overturn this rule, upon the strength of the Revised Statutes (1 Rev. Stat. 772) and the Statute of 1837 (Laws of 1837, p. 487, § 4), and to extend the defence beyond the borrower and his sureties, heirs, devisees, and personal representatives, and confer it also upon the subsequent grantees of premises subject to a usurious mortgage. But the Court for the Correction of Errors, in Post v. Bank of Utica (7 Hill, 391), overruled his decision, and even under our peculiar statutes, confined the defence to those persons only who were bound by the original contract to pay the sum borrowed (Livingston v. Harris, 11 Wend. 329)."

The testimony of the husband of the Defendant, Dempsey, offered on her behalf, was properly excluded. He was not a party to the action, and could not, therefore, be a witness on his own behalf. He could not be a witness on the behalf of his wife (Macondray v. Wardle, 26 Barb. 612, affirmed at General Term, S. C., and not reversed in Court of Appeals). The judgment of the General Term of the Superior Court of New York should be reversed, and the final judgment of the Special Term, entered May 3d, 1862, be affirmed with costs.

All concur.   Reversed.