A. B. SHANKLAND *vs.* A. NELSON & others.

October Term, 1873.

USURY—PURCHASER.—A privy in estate may impeach a contract between his vendor and a prior encumbrancer for usury, or other illegality; and in this class would fall a general purchaser of the realty, but not a purchaser of the equity of redemption, who buys subject to the prior encumbrance.

*J. H. Shankland,* for complainant.
*E. H. East,* for defendant.

THE CHANCELLOR:—The object of this bill is to recover usury taken by the defendant, the Nashville Building Association, from the complainant himself, or from third persons under whom the complainant claims as assignee or as judgment-creditor.

The bill alleges that on or about the 11th of December, 1856, the said Association was indebted to him, the complainant; the said Association having received from him the sum of five dollars on the last day of July, 1854, and a like sum for each and every month up to the 11th of December,

1856. That on this latter date complainant borrowed from said defendant $620, to secure which he executed a mortgage on certain land, and gave his bond for $2,000, conditioned to pay the sum of $1,000 to said Association by monthly instalments of $10 each, until the Association might terminate, or said sum of $1,000 be fully paid. That complainant continued these monthly payments of $10 from the date of said mortgage to the latter part of the year 1860. That about July, 1858, he became entitled to a credit of $2 per month for each month after June, 1854, "by reason of the purchase of such credit or such amount of interest in said Association," from one W. H. Long, and, after such purchase, complainant continued the monthly payment of $2 until the latter part of the year 1860. He also paid the Association many fines and penalties. That these payments were a discharge of complainant's indebtedness, but the Association refused to cancel the mortgage, except upon the additional payment of $——, he having on or about the 6th of September, 1866, paid said Association between $400 and $500 to obtain two releases of his property, one of which applied to the mortgage aforesaid. That after making proper credits and calculations, he has paid the association over and above their lawful claims not far from $500.

The bill then sets out similar transactions between the Association and the persons under whom he claims as assignee, viz., W. H. Long, J. O. Wright, and J. W. Felts, or creditor, viz., Jno. Coltart, and avers that the Association is an incorporated body in full life, that its charter has never expired, or been surrendered, nor have there been any judicial proceedings directed to its dissolution. The bill concludes thus:

"All of the premises relating to the excess of money paid to said Association, your orator charges to be contrary to equity, in that the same was obtained through fraudulent means; that the rules and regulations, by means of which the said defendants conducted their business, were contrary to law, yet so plausible upon their face as to deceive your

orator, and involve him in a complication which has proved to be highly usurious, oppressive, and injurious. Hence he invokes the exercise of the powers of this honorable court to afford him relief.''

The prayer is that an account be had between him and defendant, and Coltart and def't, and that he recover the overpayments made to release his property.

The complainant claims that he purchased lands mortgaged by Long, Wright and Felts severally to the Association, to secure similar loans to the one made to him, the amount secured being in every instance larger than the amount actually received. His purchase of the land mortgaged by Long was made on the 29th of April, 1859 ; of the land mortgaged by Wright on the 7th of March, 1857 ; of the land mortgaged by Felts on the — day of —, 185–.

The deeds filed as evidence of these purchases show that the complainant bound himself, in part consideration of the purchase, to pay the amount remaining due to the Building Association upon the mortgages executed as aforesaid. And the bill shows that the complainant made payments upon said mortgages, and obtained a release of the Long mortgage, that being one of the mortgages released by the payment of between $400 and $500 on the 6th of September, 1866, as herein before stated. The bill alleges that the actual debt has been paid on the other mortgages, if an account be taken on the same basis as the account between him and the Association, but that the Association refuses to release.

As to the Coltart overpayment, the complainant seeks to reach it as a judgment-creditor of Coltart, who has exhausted his legal remedy.

The answer admits the facts in relation to the several transactions detailed in the bill to be substantially as therein set forth. It says, however, that the defendant was a corporation, chartered by the legislature, and with bye-laws, as shown in a printed pamphlet made an exhibit. That it commenced business in July, 1854, and complainant became a

subscriber for stock, and subscribed for five shares, which were to be paid for by paying to the treasurer of the company one dollar on each share on the first day of every month, and that he made such payments until the 11th December, 1856. That the sum thus paid was, by the contract, a payment on stock. That on said last date the sum of $1,000 was put up, under the laws of said Association, to be bid for, and complainant was the highest bidder therefor, and received $620. That thereafter, by the rules of the Association, which were well known to the complainant, he was to pay $10 a month, of which $5 was to be credited upon his subscription for stock, and the other $5 on the loan, and these payments were continued up to 1860. The defendant relies upon the statutes of limitation.

The answer makes similar statements in regard to the subscription of stock and payments thereon, borrowing of money and payments thereon, of the other persons under whom the complainant claims, admitting substantially the dates, amounts, &c., as stated in the bill. And as to complainant's claim of the purchase of the lands severally mortgaged, they say he bound himself, in part consideration, to pay the residue of the mortgage debt, and cannot complain of the transaction. The answer relies upon the statute of limitations as to any demands growing out of these claims.

The object of the bill, as already stated, is to recover usury exacted from the complainant, and the other parties under whom the complainant sets up claim, and to obtain a release of the mortgages on the lands bought up by complainant, on the ground that the mortgage debts had been paid.

It will be noticed that the payments made by the complainant, and said other parties, to the Building Association were in part before there was any loan of money by the Association to said parties. These payments, it appears from the charter and bye-laws of the Association exhibited with the bill, were made on the subscriptions of said parties to the capital stock of the company. It also appears that one-half

of the monthly payments made after the several loans were, under said charter and bye-laws, intended to be credited on the stock, and the other half on the loan. *Prima facie,* such payments on the stock would not create an indebtedness from the Association to the stockholders, but would go in extinguishment of the indebtedness of the stockholder to the capital stock of the Association by virtue of his subscription. But the bill goes upon the idea that such payments created an indebtedness of the corporation to the payor, for which a credit could be claimed in the adjustment of accounts between the stockholders and the Association.

This view of the relative rights of the parties is rested upon the decision of the supreme court in the case of Martin against this same Association, reported in 2 Cold. 418. That was a bill filed by a stockholder who had borrowed money from the Association, whose stock had been assigned to secure the loans, and sold by the company, charging that the contracts were usurious, and asking for an account as between complainant and the company.

The object of that bill was the same as the object of this bill, so far as the transactions directly with complainant are involved, and the transactions themselves were identical, except that in Martin's bill his stock had been sold previous to the filing of the bill, and his connection with the Association as a stockholder had been terminated. The conclusions of the court are embodied in the closing paragraph of the opinion, which is in these words : "We are of opinion that the act of incorporation did not confer any lawful authority upon said corporation, to make any such constitution, bye-laws, rules and regulations (as those that were made) ; that it is within the power of the legislature to define and prescribe the purposes of the corporation, and not within the power of the corporation itself; and that said constitution, rules and regulations, operate injuriously and oppressively upon the members and borrowers of money, and the effect was to exact usury from the complainant ; that the constitution, by-laws, rules and regulations of this association, was

a scheme, shift and device to avoid the laws of usury, and a violation of the laws of the land, and are, therefore, inoperative and void. An account will be taken, in which the complainant will be charged with the money received by him, and credited by all the sums of money paid by him to the Association, with interest; and if any balance should remain due to the Association, their liens on the property will be enforced."

This decision is certainly very broad. It settles that the "constitution, bye-laws, rules and regulations of the Association" are "inoperative and void," and that the corporation only exists for the purpose of settling with those who have dealt with it as a borrower of money on the basis of debtor and creditor. I cannot see that the severing of the relation of stockholder, by the sale of the stock, has any weight in the ruling. If the "constitution, bye-laws, rules and regulations" are void, because oppressive and injurious upon the members and borrowers, any person who has dealt with the corporation even as stockholder, if also a borrower, may treat the whole transaction as a nullity, and sue for a recovery of the money paid by him, subject, of course, to be charged with all moneys which he may have received. This decision is conclusive upon me, and renders it unnecessary to ascertain whether my own judgment would, or would not have led me to a different conclusion in whole or in part.

This being so, the complainant is entitled to an account as between him and the Association, in which he will be charged with the money received by him, and credited with the money paid by him. Upon the first branch of his case, the rights of the complainant seem clear. For, the last payment having been made on the 6th of September, 1866, the statutes of limitations are not in his way. *Boyers* v. *Boddie*, 3 Hum. 666; *Threadgill* v. *Timberlake*, 2 Head, 395; *Weatherhead* v. *Boyers*, 7 Yer. 545.

The complainant's rights are equally clear so far as he seeks, in the character of a judgment-creditor of Coltart, to subject any surplus of debt due from the Association to Col-

tart, the defendant, Coltart, electing in his answer to treat the transactions between him and the Association as those of debtor and creditor. The statutes of limitations seem not to be in the way.

The learned counsel for the defendant has not seriously controverted the complainant's right of recovery to this extent. But he strenuously resists any further recovery, upon the ground that the complainant, being only a purchaser of the lands mortgaged by the several parties under whom he claims, and upon the express consideration that he pay the balance of the mortgage debts secured, and without any assignment of the right to sue for usury, cannot avail himself of the usury, if any in the transaction between his vendors and the Association. The right to raise the question of usury, he insists, is personal to the debtor, and does not pass to a vendee of the mortgaged premises, there being no express assignment of the right to recover usury. He cites, *Green* v. *Kemp*, 13 Mass. 515 ; *Mechanics' Bk.* v. *Edwards*, 1 Barb. 271 ; *Sands* v. *Church*, 2 Seld. 347 ; *Storey* v. *Amer. Life Ins. Co.*, 11 Paige, 635 ; 1 Wash. on Real Estate, 598, top page ; *Shufelt* v. *Shufelt*, 9 Paige, 145 ; 3 Barb. ch. 640 ; 7 Hill, 391.

I have examined the authorities, and find that a privy in estate, and in this class would fall a general purchaser, may impeach the legality of a contract between his vendor and a prior encumbrancer, but a purchaser of the equity of redemption, who purchases subject to the prior encumbrance, cannot. This distinction is clearly enunciated by Ch. Walworth in *Shufelt* v. *Shufelt*, 9 Paige 145. "In the ordinary case," he says, "of the giving of a usurious mortgage by the owner of the mortgaged premises, the statute having declared the usurious security void, the owner of the premises of course has the right to sell his property, or to mortgage the same, as though such void mortgage had never existed. And the purchaser, in such a case, necessarily acquires all the right of his vendor to question the validity of the usurious security. For if the original mortgagor had not that

30

right, the premises would, to a certain extent, he rendered inalienable in his hands, notwithstanding the encumbrance thereon was absolutely void as to him. He may, however, if he thinks proper to so do, elect to affirm the usurious mortgage, by selling his property subject to the payment or to the lien of such mortgage. And the purchaser, in that case, takes the equity of redemption merely, and cannot question the validity of the prior mortgage on the ground of usury." He cites *Green* v. *Kemp*, 13 Mass. 515, and *Bridge* v. *Hubbard*, 15 Id. 103.

In *Storey* v. *American Life Ins. Co.*, 11 Paige, 635, the same eminent judge extended the principle to the case of any illegal contract, remarking that the like difficulty, as in case of usury, exists when the transaction with the vendor is illegal upon any other ground.

In *Sands* v. *Church*, 6 N. Y., 347, the Court of Appeals, through Edwards, J., give the subject thorough consideration in view of a conflict in their state decisions, and an apparent, if not real, conflict in the decisions of the Supreme Court of the United States. They held--that although the defense of usury, or illegality, is not so personal but that the debtor's grantee may set it up, yet it is so far personal that the debtor may waive it, and that by granting subject to the debt he does waive it so that the grantee cannot avail himself of it; and, further, that the grantee, who takes it so incumbered, binds himself, in a measure at least, to the payment of the debt. He makes a valid contract, and for a valuable consideration, that so far as he owned, or was interested in the mortgaged premises, he would hold subject to the payment of the debt.

"It would be contrary to equity," they add, "to allow him to avoid its payment. It would be discharging him from his obligation and leaving the mortgagor still liable. It would be releasing the land from the incumbrance, when he had agreed that it should be subject to it. It would be continuing the mortgagor under an obligation which his vendee had assumed upon himself, and, in the language of *De Wolf* v. *Johnson*, 10 Wheat. 292, ' it would hold out no

relief to the borrower, but would be only transferring his money from the pocket of the lender to the pocket of the holder of the equity of redemption;' and, I may add, in open violation of his contract.''

A further reason for the conclusion reached in these cases will be found in the fact that the first mortgagee, the party to the usurious or illegal contract, is still liable to be called to account by his mortgagor, who, while he has sold his equity of redemption, has certainly not parted with his right to call his creditor, the mortgagee, to account.

All of the conveyances of the lands of Long, Wright and Felts under which complainant claims, contain substantially this provision : '' And the said Shankland, in consideration of the premises, agrees to pay the calls due from said Long to said Association, by virtue of the bond and mortgage hereinbefore mentioned (of which he.is cognizant), that is to say, he is to pay the said Association the sum of —— dollars per month, on or before the last day of each month succeeding the present date, until the whole sum of —— dollars, and the interest thereon, payable monthly, is paid and satisfied, or until said Association terminates and closes.'' The complainant purchased, therefore, with knowledge of the sum due upon the mortgage, and expressly, as part of the consideration of his purchase, promises to pay it. He is consequently estopped to enquire into the illegality of the transaction. Decree accordingly.