YANKEE, The (GALLAGHER v.). See Case No. 5,196.

YANKEE BLADE, The (VANDEWATER v.). See Case No. 16,847.

YARDLEY (EASTBURN v.). See Case No. 4,252.

## Case No. 18,125.

YARDLEY v. NEW YORK GUARANTY & INDEMNITY CO. et al.

KILGOUR v. SAME.

GOODMAN et al. v. SAME.

[1 Flip. 551.] [1]

Circuit Court, W. D. Tennessee. May 15, 1876.

USURY AS DEFENSE—RIGHT TO SET UP—AFFIRMATIVE RELIEF—RULE IN EQUITY.

1. The general rule is, that a stranger cannot set up usury as a defense, and that the transaction can only be impeached by the borrower or those in privity with him.

2. The case in 4 Pet. [29 U. S.] 205, is the later adjudication of the supreme court, and apparently strikes at the root of the general rule above stated.

3. The rule in equity is well established that affirmative relief against a usurious contract will be granted only upon condition that the plaintiff pay the defendant the amount of money advanced, or at least allow a decree therefor.

The original bill was filed on the 20th day of May, 1875, in the chancery court of Shelby county, Tennessee, by T. W. Yardley as owner of three bonds for $1,000 each, of an issue of 600 bonds for $1,000 each, made by the

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

30 Fed.Cas.—50

Memphis Water Company, and secured by a trust deed or mortgage of the franchises and property of the company made to F. S. Davis and T. R. Farnsworth, trustees. The complaint alleged that the defendant, the New York Guaranty and Indemnity Company, held two hundred and sixty-seven of said bonds as collateral for a loan made at New York City to the Water Company, for which interest was charged at the rate of seventeen per cent. per annum, ten per cent. of which was under cover of pretended commissions, fraudulently resorted to to conceal usury, and in violation of the charter of said Guaranty and Indemnity Company, and of the law of the state of New York. The prayer of the bill is for an injunction restraining the trustees named in the trust deed or mortgage aforesaid from selling the trust property, as they proposed to do; the Water Company having made default of payment of interest on said bonds. An answer and cross bill was filed by Charles H. Kilgour, as owner of nine of said bonds, joining in the complainant's prayer for an injunction. A temporary restraining order was granted; but meantime the property described in the trust deed had been bid off by the defendant, the New York Guaranty and Indemnity Company. On the 24th of May, 1875, the sale was set aside, and by consent it was ordered by the chancellor that all holders of bonds and of liens file answers asserting their claims.

The Guaranty and Indemnity Company, and the State Loan and Trust Company, filed separate answers, and incorporated therein demurrers to the bill and the two cross bills. The demurrers to the bill and to the cross bill of Kilgour were heard and overruled by the state court.

From the answers of the New York companies, it appears that the Guaranty and Indemnity Company loaned the Water Works Company $98,000, and received as security for payment one hundred and sixty-four bonds of the Water Company for $1,000 each; and the State Loan and Trust Company loaned the Water Works Company $62,000, which was secured by the pledge of one hundred and three bonds for $1,000 each. These loans were made at New York City, and evidenced by notes at ninety days, which were renewed from time to time. The nominal rate of interest was seven per cent. per annum; but two and one-half per cent. for each ninety days was charged as a "commission" for the care and custody of the bonds pledged, and "for supervising the disbursement of the money advanced," all of which was used in the construction of the works of the Water Company.

The answer and cross bill of [William A. Goodman, T. G. Gaylord, and Matthew Addy] the trustees of the Gaylord Iron and Pipe Company sets up their ownership of two hundred and forty-four bonds of the Water Company, issued to the Gaylord Iron and Pipe Company prior to the loans by the New York

companies, alleges that the mortgage made by the Water Company is a scanty security for the bonds issued, and attacks for usury the bonds held by the New York companies, alleging that no services were rendered, or intended to be rendered, for the pretended commissions charged by those companies, but that they were mere devices fraudulently resorted to to evade the usury laws of New York, and the prohibitions of their charters. The cause having been removed to the circuit court of the United States, came on to be heard before the court upon the demurrer by the New York companies to the answer and cross bill of the Gaylord trustees. The points of the demurrer sufficiently appear in the argument.

Sage & Hinkle and George Gantt, for the Gaylord Iron and Pipe Company.

Patterson & Lowe, for the Memphis Water Company.

Wm. M. Randolph, for the New York Guaranty and Indemnity Company, and the State Loan and Trust Company of New York.

BROWN, District Judge. While the general rule is recognized by all the authorities that a stranger cannot set up usury as a defense, and that the transaction can only be impeached by the borrower or those in privity with him, the application of this doctrine has occasioned a vast amount of litigation, and the authorities are far from harmonious. These questions of privity have arisen most frequently in the state of New York, where the penalty for usury is most severe, and usurious loans most frequent. The following rules are deduced from the authorities of that state:

1. That, notwithstanding the statute declares the usurious contract absolutely void, it is in reality only voidable, and the borrower may affirm it. (a) He may do this, if a mortgageor, by selling the mortgage property subject to the usurious mortgage. Sands v. Church, 6 N. Y. 347; Chamberlain v. Dempsey, 36 N. Y. 144; Mechanics' Bank v. Edwards, 1 Barb. 271; Post v. Bank of Utica, 7 Hill, 406; Hartley v. Harrison, 24 N. Y. 170. (b) By appropriating property for the payment of a usurious debt, or assigning property to a trustee for that purpose. In such case the assignment is valid, and neither the assignee nor other person can attach the secured debt for usury. Murray v. Judson, 9 N. Y. 73; Green v. Morse, 4 Barb. 332; French v. Shotwell, 5 Johns. Ch. 555; s. c. 20 Johns. 668; Denn v. Dodds, 1 Johns. Cas. 158.

2. The borrower may disaffirm the contract and not only personally impeach it for usury, but may grant to another the right to do so. He may do this: (a) If a mortgageor, by selling his entire interest in the mortgaged property, including his right to impeach the usurious transaction. Shufelt v. Shufelt, 9 Paige, 137; Brooks v. Avery, 4 N. Y. 225. (b) A creditor who seizes the entire mortgaged

property on execution, also succeeds to the right of his debtor in this regard, and may sell the property free from the usurious loan. Mason v. Lord, 40 N. Y. 476; Post v. Dart, 8 Paige, 639; Dix v. Van Wyck, 2 Hill, 528; Jackson v. Tuttle, 9 Cow. 233; Carow v. Kelly, 59 Barb. 239; Thompson v. Van Vechten, 27 N. Y. 568; Schroeppel v. Corning, 5 Denio, 236. The authorities in other states are not entirely harmonious; most of them, however, hold that where a party takes subject to a usurious mortgage, he cannot impeach the security. Green v. Kemp, 13 Mass. 515; Town of Reading v. Town of Weston, 7 Conn. 409; Loomis v. Eaton, 32 Conn. 550; Baskins v. Calhoun, 45 Ala. 582; Fielder v. Varner, Id. 429; Stephens v. Muir, 8 Ind. 352; Henderson v. Bellew, 45 Ill. 322; Huston v. Stringham, 21 Iowa, 36; Farmers' & Mechanics' Bank v. Kimmel, 1 Mich. 84.

Unfortunately, the only two decisions of the supreme court of the United States are in direct conflict upon this point. The first is that of De Wolf v. Johnson, 10 Wheat. [23 U. S.] 367. This was a bill to foreclose a mortgage which the assignee of the equity of redemption attempted to defeat by proof of usury between the mortgageor and mortgagee. The terms of sale of the property were expressly subject "to the incumbrances of my previous mortgage or deed of trust, particularly a mortgage deed to De Wolf from Prentis, dated," etc. In disposing of the case the court observed: "Again it is perfectly established that the plea of usury, at least as far as to landed security is personal and peculiar; and however a third person, having an interest in the land may be affected, incidentally, by a usurious contract, he cannot take advantage of the usury. Here, then, the case presents a third person, the assignee of an equity of redemption, setting up a defense, which, in one aspect, Prentis himself cannot set up; but, on the contrary, under the state of the pleadings must be supposed to have refused to set up, or have abandoned. * * * But had they purchased from Prentis in the most absolute and general manner, and altogether without notice, actual or constructive, they still could have acquired no more than an equity of redemption, and that would not have transferred to them the right of availing themselves of the plea of usury. It would indeed be astonishing, were it otherwise. for the contrary rule would hold out no relief to the borrower; it would only be transferring his money from the pocket of the lender to the pocket of the holder of the equity of redemption."

The case of Lloyd v. Scott, 4 Pet. [29 U. S.] 205, involves the same principle. One Scholfield, the owner of certain real estate in Alexandria, in consideration of five thousand dollars, granted to one Moore, his heirs and assigns forever, an annuity of five hundred dollars payable in half-yearly installments, with power to distrain for non-payment. Scholfield subsequently conveyed to the plaintiff, Lloyd, the property in question, subject to

this charge. Upon distress afterwards made for rent, Lloyd brought replevin, claiming the annuity or rent charge was a mere device to cover a usurious loan. The court held that he could defend upon this ground, and disposed of the case of DeWolf v. Johnson [supra], by saying that "the question whether the purchaser of an equity of redemption can show usury in the mortgage, to defeat a foreclosure, was not involved in the case." It is true that the case was disposed of upon two grounds, one of which was that the contract was not in fact usurious, and the other that the defendant could not take advantage of usury if any had existed, but there is nothing to indicate it was not decided as much upon one ground as the other.

This opinion in Lloyd v. Scott [supra] though contrary to a great weight of authority and of the prior decision of the court which announced it, I am bound to respect as the later adjudication of the court, and it apparently strikes at the root of the general rule stated in the opening of this opinion, that the defense of usury is personal to the borrower. I think the principle there announced covers the case under consideration. It is true, as argued by the defendants, that the plaintiff, and every purchaser of bonds acquired the bonds they hold with the understanding and upon the condition that the deed of trust securing them, secured alike the whole issue of six hundred bonds and that the contract between all the parties was, that each of the bonds was secured by one sixth-hundredth part of the property conveyed; at the same time, every purchaser of these bonds had a right to assume that they were negotiated at a legal rate of interest and were interested in their realizing for the company as much as possible. Every dollar received by the company from the sale of these bonds and subsequently put upon the water works added to the security of every other bondholder. If bonds were sold at but fifty cents on the dollar, but half the money would be realized that there would have been had the bonds been sold at par. By one-half the amount of these bonds, therefore, the security of each bondholder would be lessened.

But there is a defect in the case made by the cross bill, which seems to me fatal to the relief sought. The parties to these suits are contestants for priority of payment. The cross bill sets forth the usury in the contracts under which the defendants held these bonds; prays that the trustees named in the mortgage may be enjoined from selling the property, and that the bonds issued to the defendants may be surrendered and cancelled. The rule in equity is well established that affirmative relief against a usurious contract will be granted only upon condition that the plaintiff pay the defendant the amount of money advanced, or at least allow a decree therefor. This rule has been repeatedly recognized by the supreme court of the United States. See Brown v. Swan, 10 Pet. [35 U. S.] 497; Tif-

fany v. Boatmen's Ass'n, 18 Wall. [85 U. S.] 385.

In the case of Spain v. Hamilton's Adm'rs, 1 Wall. [68 U. S.] 604, it was held that the complainant who was contesting his claim to priority upon a fund in the treasury could only have relief for the excess over the real debt. I see no reason why that rule is not applicable here. While it would not be necessary for the complainant in a bill of this kind to offer to pay the defendants the amount of money advanced to them, with legal interest, I think they should consent, as a condition of the relief sought that the defendants have decrees for the amount so advanced. This, however, was evidently not the purpose of this bill. It seeks no less than the entire cancellation of the bonds held by the defendants, and the entire exclusion of their claim from the fund to be realized from the sale of the property.

Without undertaking to decide whether a bill might not be filed after the sale of the property, praying for a reduction of this claim to the amount actually advanced, with legal interest; or whether this bill may not be amended so as to accomplish, practically, the same purpose, it seems to me that in its present shape the case made by the cross bill of complainant cannot be sustained.

The demurrer to the cross bill must therefore be sustained.